**SOUTHWESTERN PAPER CO. OF DALLAS v. CAMPBELL et al.**

No. 12001.

Court of Civil Appeals of Texas. Dallas.

Sept. 19, 1936.

Rehearing Denied Oct. 17, 1936.

Walter B. Branan, of Dallas, for appellant.

Bromberg, Leftwich, Carrington & Gowan, of Dallas, for appellees.

BOND, Justice.

This suit was instituted in a district court of Dallas county by appellant, Southwestern Paper Company of Dallas, against the appellees, the Texas Publication House, Mercantile National Bank at Dallas, Equitable Securities Company, Travis Campbell, and Dan D. Rogers.

The principal contention of appellant centers about a transaction between the Texas Publication House and the Mercantile National Bank, in which the publication house executed and delivered to the bank a chattel mortgage on all of its printing equipment to secure a loan of $11,500, which appellant contends was fraudulently done to hinder, delay, or defraud its creditors. The property was sold under the terms of the mortgage and the Equitable Securities Company, a subsidiary of the Mercantile National Bank, became the purchaser thereof.⁵ In the transaction, Travis Campbell was the principal actor for the publication house and Dan D. Rogers for the Mercantile National Bank. Appellant sought judgment against appellees for damages on account of alleged fraud; also for debt against the publication house and for cancellation of the conveyance, and to subject the property so conveyed to the satisfaction of its debt and judgment.

The trial court submitted the cause to a jury and the jury found: (1) That the Texas Publication House executed and delivered the chattel mortgage to the Mercantile National Bank, with the intent to hinder, delay, or defraud its creditors, (2) that the officers of the Mercantile National Bank, in charge of such transaction, had notice

of the intent of the publication house to hinder, delay, or defraud its creditors, and (3) that of the money loaned by the bank to the publication house, for which the mortgage was given, the sum of $2,612.13 was paid to appellant.

On motion, the court rendered judgment in favor of the appellant and against the publication house for the debt sued on, to wit $16,292.62, but refused to render judgment canceling the conveyance of the mortgaged property to the Equitable Securities Company and subjecting the property to the satisfaction of appellant's debt; and rendered judgment also that appellant take nothing against the other defendants. The judgment contains a recital that the trial court "concluded that it should have sustained the motions of defendants for an instructed verdict"; thus by the clearest implication and, perhaps, expressly setting aside the verdict of the jury and rendering judgment notwithstanding it.

By appropriate assignments of error, appellant contends that the trial court committed error in rendering judgment non obstante veredicto, since according to the record he was authorized to submit the issues to the jury, and on the verdict rendered judgment canceling the conveyance of the property, and subjecting it to the satisfaction of appellant's debt; and, furthermore, the trial court committed error in failing to submit issues to reflect findings that the transactions between the publication house, the Mercantile National Bank, Equitable Securities Company, and Travis Campbell and Dan D. Rogers were fraudulent, entitling appellant to judgment for damages against all of them for the wrong committed.

■ Article 3996, R.S. (as amended by Acts 1927, c. 30, § 1 [Vernon's Ann.Civ.St. art. 3996]), provides that: "Every gift, conveyance, assignment, or transfer of, or charge upon, any estate real or personal, every suit commenced, or decree, judgment or execution suffered or obtained and every bond or other writing given with intent to delay, hinder or defraud creditors, purchasers, or other persons of or from what they are, or may be, lawfully entitled to, shall, as to such creditors, purchasers or other persons, their representatives or assigns, be void. This article shall not affect the title of a purchaser, for valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor." Thus, it will be seen that,

if there is evidence raising the issues that the Texas Publication House executed and delivered the chattel mortgage to the Mercantile National Bank with the intent to delay, hinder, or defraud its creditors, and that the Mercantile National Bank, or its subsidiary, the Equitable Securities Company, had notice of the fraudulent intent, the trial court clearly would not have been authorized in setting aside the verdict of the jury and rendering a judgment notwithstanding it. On the other hand, issues properly pleaded, but without any evidence to support such pleadings, the verdict of the jury cannot form any basis for a judgment; and, if a directed verdict in favor of appellees would have been proper, a judgment non obstante veredicto would necessarily follow. This leads to a close examination of the record, the testimony being uncontroverted.

Appellant and the Mercantile National Bank were the principal creditors of the publication house, the debt of the bank being approximately $5,000 and unsecured, and the debt of appellant being approximately $16,-000 and unsecured. Appellant and the bank had equal knowledge as to their debtor's assets. Appellant's vice-president discussed with Mr. Rogers, vice-president of the bank the advisability of their requiring a mortgage from their debtor as security for their respective debts. At that time, the debtor was adverse to giving a mortgage to any of his creditors, and Mr. Rogers expressed an opinion that the debtor's assets were sufficient to pay all of its debts, and that a mortgage was unnecessary. In which opinion, having equal knowledge of the facts, appellant, through its said vice-president, concurred. In that discussion Mr. Rogers stated that he did not intend at that time to take a mortgage on the debtor's property to secure the bank's note.

Subsequently, appellant's vice-president insisted upon the publication house reducing its indebtedness of approximately $16,000 to $10,000 and suggested that, unless the minimum requirement was complied with, appellant would be compelled to put its estate in receivership or bankruptcy; and urged the publication house to secure money necessary to meet its demands from its bank, which was the appellee, Mercantile National Bank; whereupon, the debtor sought and obtained from the bank an additional loan of $6,500 by giving the chattel mortgage on the property involved in this suit. The mortgage was given to secure a valid and subsisting

522

indebtedness of $11,500—the $5000 pre-existing and the $6,500 then advanced in cash—resulting in appellant receiving approximately $5,000 payment on its debt.

The chattel mortgage was promptly filed for registration and some seven or eight months thereafter, on default in payment of the money loaned, the property was advertised and sold under the terms of the mortgage to the Equitable Securities Company, who thereafter leased the property to appellee Travis Campbell, who holds it under the terms of the lease contract. The record reveals that appellant had actual and constructive knowledge of the existence of the mortgage, prior to its foreclosure, and that the property conveyed was the only asset of the debtor.

■ From this record, we fail to see, as did the trial court, any suspicious circumstance that overhangs the transaction as a badge of fraud. Ordinarily, whether a conveyance was made with the intent to defraud creditors is a question of fact for the jury or for the court passing on the facts, as is also the question whether the grantee in such conveyance had knowledge or notice of such intent; but, where the evidence indisputably shows that the conveyance was not made to cover up the debtor's property, and there is no evidence tending to show a participation in or knowledge of any purpose to defraud on the part of the mortgagee, the issue becomes one of law.

At the beginning of the alleged transaction, when the publication house was indebted to the bank in the sum of only $5,000 and to appellant in the amount of $16,000, Mr. Rogers, vice-president of the bank, concluded then that there was no necessity for encumbering the debtor's property with a mortgage, and, at that time, did not intend to do so. Subsequently, the situation changed, appellant demanded of the Texas Publication House a reduction of its debt under threat of suit, or receivership or bankruptcy, and suggested an obvious course of action—that the debtor go to the bank, increase its loan with the bank, and satisfy appellant's demand. This action was pursued. Manifestly, the debtor's intent in executing and delivering the mortgage to the bank was to secure the money resulting from the requirements of appellant, and, under the circumstances of the debtor's financial involvement, appellant should have known that a mortgage was inevitable, and that the bank would not increase its debt without the precaution thus taken. There is, we think, not the slightest vestige of evidence that the officials of the bank acted from a desire to aid in covering up the mortgaged property; obviously, their sole desire was to have adequate security for the bank's debt. The mortgage was made for the sole purpose of enabling the debtor to pay appellant, on the demand made on it.

■ We are of opinion that the trial court should have directed a verdict in favor of appellant against appellee the Texas Publication House for the amount of its debt and in favor of all other appellees; therefore, the trial court did not commit error in rendering judgment non obstante veredicto, since according to the record there was no other judgment that it was authorized to render.

Appellant's assignments are overruled and judgment of the lower court is affirmed.

Affirmed.