Antoinette Maida LETSOS, Independent Executrix of the Estate of Lena Maida, Deceased, Appellant,

v.

H. S. H., INC., et al., Appellees.

No. 6052.

Court of Civil Appeals of Texas, Waco.

Dec. 20, 1979.

Rehearing Denied Jan. 10, 1980.

Wayne H. Paris, Lykos & Bergner, Houston, for appellant.

John A. Croom, Neal D. Cannon, Jr., Houston, for appellees.

## OPINION

JAMES, Justice.

This is an appeal from a case involving an alleged fraudulent conveyance. Plaintiff-Appellant Antoinette Maida Letsos, Independent Executrix of the Estate of Lena Maida, Deceased, alleged that Defendant-Appellee Salvadore J. Maida had conveyed property to Defendant-Appellees H. S. H., Inc. and Robert L. Terry III, that such

transfer was made to hinder, delay, and defraud Maida's creditors, that the transfer was not supported by fair consideration, and that the conveyance should be set aside under Arts. 24.02 and 24.03 of the Texas Business and Commerce Code.

This case factually originated in 1963 when Appellee Maida purchased all the common stock in an entity known as Houston Shoe Hospital, Inc. from his mother, Lena Maida, for a $150,000.00 promissory note. The note was secured by the said common stock. In 1969, Appellee Maida defaulted in the payments under the note, and subsequently the guardian of Lena Maida, and upon her death, the executrix of her estate, Antoinette Maida Letsos, Appellant, brought suit on the note. In July, 1973, Appellee Maida entered into an Agreed Judgment with Appellant Letsos, wherein it was ordered that the Estate of Lena Maida recover from Appellee Maida the sum of $94,500.15 plus certain specified interest and that the lien on all the stock of Houston Shoe Hospital, Inc. before closed. Up until 1970, the Houston Shoe Hospital, Inc. had maintained its corporate status and Maida, the sole stockholder, had operated the business. In 1970, the entity forfeited its corporate status by reason of its failure to pay its franchise taxes. Appellee Maida continued to operate the business as a sole proprietorship, using the equipment and other assets of the corporation. In March or April of 1974 Appellee Robert Terry and his brother Stan Terry formed the corporate Appellee, H.S.H., Inc. In September of 1974 Appellee Maida conveyed all the assets of the Houston Shoe Hospital, including the trade name, to H.S.H., Inc. in return for a promissory note in the principal amount of $7,800.00. After the conveyance Maida was retained as an employee of H.S.H., Inc., his principal duties being the supervision of the actual shoe repair operation. At the time of the conveyance Maida was hopelessly in debt. In addition to some $11,896.43 in liens against the business machinery and equipment, Maida owed a substantial amount of back taxes (in the approximate total amount of $35,000.00) to the Federal and State governments. He

had also incurred other substantial personal debts to individuals and businesses. Although H.S.H., Inc. did not assume the debts and obligations of Maida, as consideration for the property transferred, H.S.H. took the property subject to the liens outstanding and (H.S.H.) subsequently paid off many of Maida's obligations, including the taxes owed by him. H.S.H., Inc. did not, however, make any payments on the $7,800 note directly to Appellee Maida, since the Appellees, including Maida, later agreed that the payment of Maida's creditors would satisfy the terms of the note. H.S.H., Inc. did not ever attempt to satisfy any indebtedness resulting from the 1973 judgment in favor of the Estate of Lena Maida. In January of 1976, Appellant Letsos, Independent Executrix of the Estate of Lena Maida, filed this suit alleging that the conveyance to H.S.H., Inc. was made in fraud of the Estate's rights in the property of Salvadore Maida, and that the conveyance was in violation of Arts. 24.02 and 24.03 of the Texas Business and Commerce Code. Trial was to a jury which rendered its decisions on special issues, finding that the transfer of September 2, 1974: 1) did not lack fair consideration, and 2) was not intended to delay or hinder Appellant from obtaining that to which she was entitled, and 3) was not intended to defraud Appellant from obtaining that to which she was entitled. Judgment was rendered on the verdict that the Appellant take nothing.

The trial court placed the burden of proof upon Plaintiff-Appellant Letsos in the submission of all five of the special issues submitted to the jury, and the record does not show that Plaintiff-Appellant made any objection or exception to such placing of the burden of proof in any of such special issues.

Strictly speaking, the jury's answers to such special issues amounted to the following findings, or rather, failures to find, to wit:

(1) In answer to Special Issue No. 1, the jury failed to find that the property transfer in question lacked fair consideration.

(2) In Answer to Special Issue No. 2, the jury failed to find that the said property transfer was intended to delay or hinder the Plaintiff from obtaining that to which she was entitled.

(3) There was no answer to Special Issue No. 3, and none necessary, since it was conditionally submitted upon an affirmative answer to Special Issue No. 2.

(4) In answer to Special Issue No. 4, the jury failed to find that the property transfer in question was intended to defraud Plaintiff as a creditor of Maida, from obtaining that to which she was entitled.

(5) There was no answer to Special Issue No. 5, and none necessary, since it was conditionally submitted upon an affirmative answer to Special Issue No. 4.

▮ Appellant in points of error numbers one and three asserts that the evidence is legally and factually insufficient to sustain the jury's finding that the conveyance "was made for fair consideration." In arguing these points, Appellant asserts that the Defendant-Appellees had the burden of proving that the conveyance was made for fair consideration. Appellant then argues that *Appellees* failed to meet their burden in that 1) *Appellees* failed to adduce any evidence of the market value of the property transferred or 2) that the evidence adduced by *Appellees* relevant to market value was factually insufficient to support the jury's finding. Both of these assertions are predicated on Appellant's primary contention that the *Appellees* had the burden of proof. The jury finding complained of was in response to Issue No. 1 which was submitted as follows:

"Do you find from a preponderance of the evidence that the reasonable value of the property transferred from Defendant, Maida, to Defendant, H.S.H., Inc., on September 2, 1974, was not made for fair consideration?

"In connection with this Special Issue, you are instructed that fair consideration is defined as that which is equal or reasonably proportioned to the value of that for which it is given on the date of the transfer.

"Answer: 'It was not made for fair consideration' or 'It was made for fair consideration.' "

The answer of the jury was "It was made for fair consideration." It is clear from the way this issue is worded that the burden of proof was placed on the Plaintiff-Appellant to show that the conveyance lacked fair consideration. The Appellant made no objection or exception to the framing of this issue in the trial court. She has therefore waived her right to appeal claiming that the burden of proof was improperly placed. Rules 272, 274, Texas Rules of Civil Procedure; *Southwestern Hotel Co. v. Rogers* (El Paso Tex.Civ.App.1944) 183 S.W.2d 751, affirmed 143 Tex. 343, 184 S.W.2d 835; *Cartwright v. Minton* (Eastland Tex.Civ.App. 1958) 318 S.W.2d 449, NRE. We cannot now for the first time on appeal consider Appellant's contention that the Defendant-Appellees should have had the burden of proof on this issue.

▮ We hold that the evidence does not conclusively establish that there was a lack of fair consideration, and we further hold that the answer of the jury to Special Issue No. 1 is not so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust under the doctrine of *In re King's Estate* (1951) 150 Tex. 662, 244 S.W.2d 660.

▮ Appellant also contends that the jury's finding in response to Issue No. 1 was prejudiced as a result of the trial court's improper exclusion of evidence. Appellant first tried to establish the market value of the property transferred by introducing into evidence the tax renditions of the subject property submitted by Maida's bookkeeper to the Houston/H.I.S.D. tax assessor in November of 1973. The court admitted this evidence but, in so doing, instructed the jury as follows:

"Plaintiff's Exhibit No. 6 is being admitted by the Court as being binding on the defendant Salvadore Maida and as representing the valuations of the property placed on said property in 1973, I believe it is, by him through his agent York.

These figures and valuations that are expressed by Plaintiff's 6 are not binding on the other two defendants H.S.H., Inc. and Stanley Terry."

Appellant argues that the renditions should have been received as "an admission of a party, and/or as a circumstance tending to show the market value of the property," citing *Silberstein v. State* (Austin Tex.Civ. App.1975) 522 S.W.2d 562, no writ. Appellant suggests that this instruction improperly precluded any consideration of the renditions as affirmative evidence of the market value of the property transferred. We disagree. The trial court's statement of limitation was correct. The tax renditions were hearsay evidence when offered to prove the truth of the evaluations asserted by them. They could, however, be received into evidence under an exception to the hearsay rule, i. e. as an admission of a party, to wit, Salvadore Maida. But admissions of one party to a lawsuit are not admissible against other parties. See McCormick and Ray, *Texas Law of Evidence*, Sec. 1161 and cases cited therein. It is true that an admission is not only admissible for impeachment purposes but may also be received as affirmative evidence of a material fact. *Taylor v. Owen* (San Antonio Tex.Civ.App.1956) 290 S.W.2d 771, NRE; *In re Marsh* (Amarillo Tex.Civ.App. 1961) 344 S.W.2d 251, NRE. The court's instruction expressly stated that the renditions were received as evidence "representing the valuations of the property placed on said property in 1973." The instruction properly, however, noted that the renditions were not admissions of H.S.H., Inc. or Robert Terry.

■ Appellant also attempted to introduce into evidence the 1973 Harris County property valuation forms, but the trial court properly ruled these inadmissible. These valuations were placed on the property by the tax assessor-collector; they were not sworn to or signed by Maida nor were they signed by his agent. Thus, the valuations could not be construed to be admissions of Maida, who was a total stranger to the statements of value contained in the forms. *McLane v. Paschal*, 74 Tex. 20, 11 S.W. 837; *Jackson v. Goldberg* (San Antonio Tex.Civ.App.1926) 283 S.W. 860, no writ; *City of Houston v. Priester* (Galveston Tex.Civ.App.1957) 302 S.W.2d 948, no writ.

■ Appellant's last complaint regarding the exclusion of evidence related to Issue No. 1 involves an attempt to establish the value of the property by introducing income tax records prepared for the Houston Shoe Hospital, Inc. in 1972. These records contained information about the cost basis of the transferred property. The trial court properly ruled these records inadmissible as hearsay. Appellant attempted to introduce these records through the testimony of a Mr. Petrov, a Houston CPA, who had prepared the records. There was no testimony that these forms were ever filed, signed, or approved by Mr. Maida, so they would not qualify under an admission exception. *McLane v. Paschal; Jackson v. Goldberg; City of Houston v. Priester*; all cited supra. Appellant attempted to introduce the records under the business records exception, Art. 3737e, V.A.C.S., but failed to meet the requirements of that exception. Art. 3737e renders such records admissible if:

\* \* \* \* \* \*

"(b) It was the regular course of that business for an employee or representative of such business with personal knowledge of such act, event or condition to make such memorandum or record or to transmit information thereof to be included in such memorandum or record";

\* \* \* \* \* \*

Mr. Petrov testified that these tax records were prepared by him based on information provided by Mr. York, Maida's bookkeeper. Mr. Petrov had no personal knowledge of the facts which formed the basis of the tax statement, and Mr. York was not an employee of Mr. Petrov's firm. *Skillern & Sons, Inc. v. Rosen*, 359 S.W.2d 298, 305. (Tex.1962).

We agree with the above evidentiary rulings of the trial court and therefore over-

**670**

rule Appellant's points number five, six, and seven.

Appellant's last two points of error relate to the jury's failure to find that the conveyance of property in question was intended to hinder, delay, or defraud the Appellant creditor. Appellant contends that fraudulent intent was proved as a matter of law in this case, there being no evidence to rebut Appellant's evidence; or, in the alternative, the Appellant argues that the jury's adverse answer was clearly against the great weight and preponderance of the evidence. We cannot agree with either of these two points. The testimony was clear that Mr. Maida was a truly harried person, hopelessly in debt. He had lost money consistently since taking over the business in 1963. He testified that his business was in a terrible mess and he simply wanted to get out from under it. He testified that he sought no personal gain other than relief from the day to day pressures of a failing business. Maida testified that he had an agreement at the time of the transfer that the Terrys would pay off his tax indebtedness. Further, the Terrys did subsequently pay off the tax indebtedness and paid other creditors as well. Maida accepted these payments to creditors in satisfaction of the $7800.00 note due him.

The question of whether a conveyance is made with the intent to delay, hinder or defraud creditors is ordinarily a question of fact for a jury, unless the fraud is admitted, or unless the fraudulent intent is apparent on the face of the instrument of conveyance, or unless there is some interest reserved in the property that is inconsistent with the conveyance alleged. *Quinn v. Dupree,* (Tex.1957) 157 Tex. 441, 303 S.W.2d 769. In our opinion the evidence in this case presented a fact issue for the jury and the evidence was factually sufficient to support the jury's answer. For similar facts, see *Williams & Chastain v. Laird* (Waco CA 1930) 32 S.W.2d 502, writ refused.

Having carefully considered all of Appellant's points of error, and having found no error in the record, we affirm the judgment of the trial court.

AFFIRMED.