**S. M. ADAMS, Jr., Trustee, Appellant,**

v.

**Maida Harris WILHITE, Appellee.**

No. 1532.

Court of Appeals of Texas, Tyler.

July 8, 1982.

Rehearing Denied Aug. 12, 1982.

---

E. McAlister Benchoff, William D. Guidry, Benchoff & Guidry, Nacogdoches, for appellant.

Marion G. Holt, Holt, Tatum & McCarver, Nacogdoches, for appellee.

McKAY, Justice.

This appeal is from a take-nothing judgment entered against appellant S. M. Adams, Jr., Trustee (Trustee) who sued appellee Maida Harris Wilhite (Mrs. Wilhite) to set aside a transfer of property to her from William J. Wilhite (Mr. Wilhite), who had previously received a discharge in bankruptcy. Appellee cross appeals, claiming that the trial court should have granted her collateral estoppel plea.

In 1971 Mr. Wilhite leased 188 acres of land in Nacogdoches County and began operating the Bill Wilhite Dairy upon it. The lease gave Mr. Wilhite an option to purchase the land.

On August 5, 1977, Mr. Wilhite married appellee. Prior to their marriage, they had orally agreed that appellee would purchase Mr. Wilhite's dairy business. A handwritten document, dated July 28, 1977, reduced this agreement to writing.

On November 3, 1977, Mr. and Mrs. Wilhite executed numerous documents pertaining to the transfer of the dairy business to Mrs. Wilhite. They both signed a formal "Memorandum of Buy-Sell Agreement" stating they had orally agreed on or about August 1, 1977, that appellee would purchase Mr. Wilhite's dairy business.[1] In ad-

---

1. The Memorandum of Buy-Sell Agreement re-      cited that Mr. Wilhite was unable to pay his

dition to the Memorandum of Buy-Sell Agreement, Mr. Wilhite executed a Bill of Sale of personal property used in the dairy business, and assigned his interest in the 188 acre lease and purchase option to Mrs. Wilhite. Mrs. Wilhite executed a Financial Statement and signed two promissory notes totalling $149,661.14 which secured the indebtedness on the personal property and cattle.

In March 1978 Mr. Wilhite filed for bankruptcy. In April 1978 Mrs. Wilhite exercised the option to purchase the 188 acre tract of land. The Trustee, on September 7, 1978, objected to Mr. Wilhite's discharge in bankruptcy alleging, *inter alia*, that Mr. Wilhite's transfer to Mrs. Wilhite of the leasehold interest and purchase option was done with the intent to defraud his creditors. The Bankruptcy Court overruled the objections to his discharge and granted Mr. Wilhite a discharge in bankruptcy, finding that he did not intend to defraud his creditors.

On October 19, 1978, the Trustee filed suit against Mrs. Wilhite in State court to set aside Mr. Wilhite's transfer of properties to Mrs. Wilhite. The Trustee alleged that, prior to August 5, 1977, and at all times thereafter, Mr. Wilhite was deeply indebted and unable to pay his business debts as they became due; that he owned certain real and personal property connected with his dairy business, including the 188 acre leasehold and purchase option; and that he transferred this property to Mrs. Wilhite on November 3, 1977, without fair or adequate consideration and with the intent to hinder, delay, and defraud his creditors. The Trustee further pleaded that following Mr. Wilhite's transfer of this property he remained in possession of the property; that Mrs. Wilhite knew of Mr. Wilhite's

business debts as they came due; that Mrs. Wilhite had used her separate funds to operate the dairy since August 1, 1977; and that Mrs. Wilhite had obtained a health permit for the dairy in her name. It further stated that on August 1, 1977, appellee and Mr. Wilhite agreed that (1) appellee would assume all secured obligations owed by Mr. Wilhite, (2) Mr. Wilhite would transfer all assets of the dairy farm to appellee, including any interest he had

intent to hinder, delay, and defraud his creditors; and that at the time of Mr. Wilhite's transfer to Mrs. Wilhite he had no property subject to execution and that she also knew this fact. By trial amendment the Trustee limited his suit to seeking recovery of the leasehold interest and purchase option. The Trustee prayed that Mr. Wilhite's transfer of this property to Mrs. Wilhite be set aside.

Mrs. Wilhite filed a plea in abatement, a general denial, and a special denial. She then filed a "Plea of Collateral Estoppel" alleging that the prior bankruptcy proceeding resulting in Mr. Wilhite's discharge settled the issue of whether Mr. Wilhite fraudulently conveyed property to Mrs. Wilhite.

The trial court overruled Mrs. Wilhite's collateral estoppel plea, and the case was tried before a jury. The jury found that Mr. Wilhite's transfer to Mrs. Wilhite was made with the intent to defraud a creditor existing at the time of the transfer; refused to find that Mrs. Wilhite acquired the property with notice of Mr. Wilhite's fraudulent intent; refused to find that the transfer from Mr. Wilhite to Mrs. Wilhite was not made for a fair consideration; found that Mrs. Wilhite had made payments on the purchase price of the 188 acre tract of land; found that these payments were made from her own separate funds; found that she had paid $18,080 as the purchase price of the land; found that she has made improvements on the land with her separate funds; found that she made these improvements in good faith and with the belief that the land was her separate property; and found that the enhanced value of the land was $35,000.

Based upon the jury verdict, the trial court entered a take-nothing judgment against the Trustee.

in the 188 acres of land, (3) appellee would use her separate funds to operate the dairy, (4) the name of the dairy would be changed to the Maida Wilhite Dairy as soon as appellee received a health permit in her name, (5) Mr. Wilhite would receive a salary and help operate the dairy, and (6) Mr. Wilhite would execute any and all papers necessary to complete the transfer of the dairy business.

We first address appellee's contention the trial court should have granted her collateral estoppel plea because the bankruptcy court had previously ruled upon the same issue that was involved in the State court suit. Appellee raises this issue by a "counter point."

The correct title for a point of error brought by an appellee appealing an adverse ruling of the trial court is a "cross-point of error." *The Basic Brief and Its Parts*, in State Bar of Texas, Texas Appellate Practice Manual § 1.47, at 57 (1974). Rule 422 of the Texas Rules of Civil Procedure, however, mandates a liberal construction of the rules governing appellate briefs. We, therefore, will consider appellee's complaint concerning the trial court's action overruling her collateral estoppel plea.

Whether the trial court acted correctly in overruling appellee's collateral estoppel plea depends upon whether the prior judgment in the bankruptcy court decided the same issue as that presented in the subsequent state court suit. *Windmill Dinner Theatre of Dallas v. Hagler*, 582 S.W.2d 585, 586 (Tex.Civ.App.—Dallas 1979, writ dism'd).

In the bankruptcy proceeding the Trustee was seeking to deny the bankrupt a discharge in bankruptcy. To deny the bankrupt his discharge, the Trustee had to prove that the bankrupt *actually intended* to defraud a creditor. 11 U.S.C.A. 727(a)(2) (1978); *In re Adlman*, 541 F.2d 999, 1003–04 (2nd Cir. 1976). The suit in state court was brought by the Trustee to set aside the bankrupt's transfer of property to appellee. Setting aside a transfer of property is governed by Article 24.02 of the Texas Business and Commerce Code (Vernon 1968). It provides:

> (a) A transfer of real or personal property, a suit, a decree, judgment, or execution, or a bond or other writing is void with respect to a creditor, purchaser, or other interested person if the transfer, suit, decree, judgment, execution, or bond or other writing was intended to

> (1) delay or hinder any creditor, purchaser, or other interested person from obtaining that to which he is, or may become, entitled; or

> (2) defraud any creditor, purchaser, or other interested person of that to which he is, or may become, entitled.

> (b) The title of a purchaser for value is not void under Subsection (a) of this section unless he purchased with notice of

> (1) the intent of his transferor to delay, hinder, or defraud; or

> (2) the fraud that voided the title of his transferor.

The Trustee pleaded that Mr. Wilhite's transfer to Mrs. Wilhite was made with the intent to delay, hinder, and defraud a creditor. Mrs. Wilhite's collateral estoppel plea asserts that the bankruptcy court's finding that Mr. Wilhite did not have the intent to defraud a creditor settles the "issue of whether or not there was a fraudlent [sic] conveyance of William J. Wilhite to Maida Harris Wilhite . . . ."

Article 24.02 clearly states that a transferor's intent to defraud is not the only ground warranting a finding of a fraudulent conveyance;[2] the other grounds are the transferor's intent to delay or hinder a creditor. The bankruptcy court passed only upon the issue of Mr. Wilhite's actual intent to defraud his creditors; it did not rule upon whether he intended to delay or hinder his creditors. The Trustee had pled that Wilhite intended to delay or hinder his creditors; thus, at the time the collateral estoppel plea was filed and ruled upon, these issues were properly before the state court. Therefore, there was not an identity of issues before the bankruptcy court and the state court. It follows that the trial court correctly overruled appellee's collateral estoppel plea. *See Steakley & Howell, "Ruminations on Res Judicata,"* 28 Sw.L.J. 355, 356–57 (1974).

The special issues concerning Mr. Wilhite's intent, however, inquired *only*

2. *See Glenney v. Crane*, 352 S.W.2d 773, 775 (Tex.Civ.App.—Houston 1962, writ ref'd n. r. e.), which holds that to set aside a transfer in a state court suit, a Trustee does not need to prove the bankrupt actually intended to defraud his creditors.

whether he intended to defraud a creditor and whether Mrs. Wilhite knew of his intent to defraud a creditor.[3] These issues asked the precise question previously decided by the bankruptcy court, and thus, under the doctrine of collateral estoppel, should not have been submitted.

■ Mrs. Wilhite apparently did not reurge her collateral estoppel plea because no objections were made to the court's charge. In *Lanphier Const. Co. v. Fowco Const. Co.*, 523 S.W.2d 29, 43 (Tex.Civ.App. —Corpus Christi 1975, writ ref'd n. r. e.) it is stated:

> Where the ground of recovery is submitted, even though it is erroneous, the parties are thereby put on notice that the jury's answers to the issues actually submitted will, if supported by the evidence, form the basis of the court's judgment. It then becomes the duty of each party to point out the errors of omission or commission, or be held estopped from thereafter urging them.

Since Mrs. Wilhite failed to object to the charge as given, she has waived her right to complain. Rule 274, Tex.R.Civ.P.; *Leatherwood v. Holland*, 375 S.W.2d 517 (Tex.Civ. App.—Fort Worth 1964, writ ref'd n. r. e.). We overrule appellee's cross point.

It might also be pointed out that the Trustee did not submit an issue on delay or hinder nor object to the charge. As a result the allegation that Mr. Wilhite did delay or hinder his creditors was waived. Rule 274, Tex.R.Civ.P.

Appellant's first and second points of error will be discussed together. Appellant's first point of error is that the trial court erred in rendering judgment against the Trustee because it was conclusively proved as a matter of law that at the time of the transfer appellee had constructive or actual notice of Mr. Wilhite's intent to defraud his creditors. Appellant's second point of error is that the great weight and preponderance of the evidence shows that Mrs. Wilhite knew facts concerning Mr. Wilhite's financial condition which did give her or should have given her fair notice of his intent to defraud his creditors. We overrule appellant's first point of error, but sustain his second point.

Although appellant attacks the adequacy of the consideration paid by Mrs. Wilhite in points of error three through five, he concedes for the first two points of error that Mrs. Wilhite paid some valuable consideration for the property she received from Mr. Wilhite. Thus, our discussion is limited to subsection (b) of art. 24.02, *supra*.

■ If the intent of the transferor to delay, hinder or defraud his creditors is known to the purchaser, or if the purchaser had constructive notice of this intent, the transfer in question is voidable, even where valuable consideration is paid. "[I]f the purchaser knows facts which would put a reasonably prudent person on inquiry and if diligence would lead to knowledge of the transferor's fraudulent intent, the purchaser is charged with constructive notice of the intent and is not protected." *Creditors' Bills To Discover and Reach Property*, in State Bar of Texas, Creditors' Rights in Texas § 14.43(a)(2), at 631 (2d ed. 1981).

Appellant urges that the presence of numerous "badges of fraud" compel the conclusion that Mrs. Wilhite had actual or constructive notice of Mr. Wilhite's fraudulent intent. A badge of fraud is an act or circumstance from which fraud may be in-

---

3. Special Issues Numbers one and two were submitted and answered as follows:

> Do you find from a preponderance of the evidence that W. J. Wilhite's transfer of the property in question to Maida Harris Wilhite was made with the intent to defraud any creditor existing at the time of the transfer represented by S. M. Adams, Jr., trustee; from obtaining that to which he is or may become entitled?
> Answer "We do" or "We do not"

> Answer: We do
> If you have answered Special Issue No. 1 "We do" and only in that event, then answer Special Issue No. 2.
> Do you find from a preponderance of the evidence that Maida Harris Wilhite acquired the property in question with notice of W. J. Wilhite's intent to defraud any such creditor represented by S. M. Adams, Jr., Trustee?
> Answer "We do" or "We do not"
> Answer: We do not

ferred. *Id.* at 632. Badges of fraud are more or less strong or weak according to their nature and the number concurring in the same case. Although badges of fraud are not conclusive, a concurrence of many in the same case will always make out a strong case of fraud. 37 Corpus Juris Secundum *Fraudulent Conveyances* § 79 (1943).

The existence of pending lawsuits against an indebted vendor at the time of the transfer alleged to be fraudulent is a badge of fraud. *Texas Sand Co. v. Shield*, 381 S.W.2d 48, 52 (Tex.1964). Another badge of fraud is the debtor's transfer of all of his property subject to execution. *Id.* at 52–53. Likewise, the purchaser's failure to examine or inventory the goods bought, or looseness or incorrectness in determining the value of the purchased property is a badge of fraud. 37 Corpus Juris Secundum *Fraudulent Conveyances* § 94 (1943). Furthermore, a close relationship between the transferor and transferee is not, standing alone, a badge of fraud; however, it does call for rigid scrutiny of the transfer and may, when considered in conjunction with other suspicious circumstances, constitute a badge of fraud. *Id.* § 96.

Mrs. Wilhite's testimony may be fairly summarized as follows: She stated that Mr. Wilhite told her "he was unable to continue his business due to his financial state"; that she did not question his financial status; that she assumed his debts on cattle, equipment, and the leasehold interest and option to purchase; that she did not go out and count the cows at the dairy; that while she had grown up with dairy animals, she had no experience actually operating a dairy; that she had never bought dairy cows before, that she sought no advice on the purchase of the cows; and that she had not previously purchased any farm equipment and had no idea of its value. She also testified that Mr. Wilhite told her the cattle and equipment had a negative equity of $30,000 against what he owed the bank on them. She stated that she mainly looked at the lease and purchase option as a place to operate the dairy, and that the lease and the negative equity on the cattle and equipment were a "package deal." She said that she was unaware of a suit against Mr. Wilhite brought by the C. A. Burgess Feed Company to collect a past-due account "until almost court date." She subsequently stated, however, that she learned of the existence of this suit in late October, prior to the execution of the November 3 document. She also testified that at the time Mr. Wilhite transferred his property to her she "didn't feel he had anything else . . . ." She said she would not have entered into the Buy-Sell agreement if she could not have obtained the lease assignment and that she would not have been able to obtain the lease assignment without assuming all the indebtedness.

Although we do not believe it was conclusively proved as a matter of law, we are of the opinion that the great weight and preponderance of the evidence, including Mrs. Wilhite's testimony, demonstrates she knew facts at the time of the transfer of the property which would put a reasonably prudent person on inquiry concerning Mr. Wilhite's fraudulent intent. Mrs. Wilhite's knowledge of Mr. Wilhite's distressed financial condition and her statement that she felt Mr. Wilhite did not have "anything else," are sufficient, in our opinion, to charge her with constructive notice of Mr. Wilhite's fraudulent intent. Coupling these facts with Mrs. Wilhite's failure to inventory the property she purchased and the close relationship between Mr. and Mrs. Wilhite at the time of the transfer leads us to conclude that the jury's answer to special issue two is so against the great weight and preponderance of the evidence that it is wrong and unjust.

Appellant's third, fourth, and fifth points of error urge respectively that it was conclusively proved as a matter of law that the sale was for a grossly inadequate consideration; that after appellant put on his prima facie case showing the transfer was not for adequate consideration, appellee failed to assume her burden of proof that it was for adequate consideration; and that the great weight and preponderance of the evidence

was that the transfer was not for fair consideration. We overrule these points.

Article 24.03 of the Texas Business and Commerce Code (Vernon 1968) states:

(a) A transfer by a debtor is void with respect to an existing creditor of the debtor if the transfer is not made for fair consideration, unless, in addition to the property transferred, the debtor has at the time of transfer enough property in this state subject to execution to pay all of his existing debts.

"Fair consideration" has been defined as "that which is equal or reasonably proportioned to the value of that for which it is given on the date of the transfer." *Letsos v. H. S. H., Inc.*, 592 S.W.2d 665, 668 (Tex. Civ.App.—Waco 1980, writ ref'd n. r. e.). *See also, Cole v. Loma Plastics, Inc.*, 112 F.Supp. 138, 140–41 (N.D.Tex.1953).

Mrs. Wilhite obligated herself to pay the following debts: two promissory notes totalling $149,661.14 and securing cattle and personal property in favor of the Stone Fort National Bank; and $4,533.99 to exercise the purchase option on the 188 acre tract of land. The remaining balance owed on the 188 acre tract was $108,000 which bore interest at the rate of five percent (5%) per annum and was payable in $600.00 monthly installments. At the time of trial, uncontroverted testimony established the value of this loan would be $73,374.96 if it bore the market rate of interest. Thus, the consideration paid by Mrs. Wilhite, figured at fair market value, was $227,570.09.

■ Even though the assets received by Mrs. Wilhite were widely valued, to determine whether she paid fair consideration, we consider only the lowest values. The machinery and cattle were valued at $121,290.00, and the 188 acre tract of land was valued at $115,225.00. Thus, the total amount of assets received by Mrs. Wilhite at the lowest valuation figures is $236,515.00. We are unable to say that she did not pay fair consideration for what she received.

In appellant's sixth point of error, he urges the trial court erred in permitting the Wilhite's accountant to testify concerning the dairy business' losses because it was immaterial, irrelevant, and inflammatory. Appellant argues that the income tax losses of the dairy business are not relevant to whether Mrs. Wilhite paid fair consideration for the dairy business and that, on the contrary, the tax losses caused the jury to be unduly sympathetic to Mrs. Wilhite. Appellee's position is that evidence of the dairy business' income tax losses was relevant to the question of whether Mrs. Wilhite paid fair consideration, because part of the consideration for the transaction was that she took over a "badly failing business" instead of a "going concern." We overrule appellant's sixth point of error.

Mr. and Mrs. Wilhite's accountant testified that he prepared their income tax returns for 1977, 1978, and 1979, and that for those three years the total losses amounted to $43,471.00. The only objection lodged at trial was that this evidence was immaterial. The trial judge overruled this objection.

■ "Immateriality" is a general objection, and courts have frequently said that it is equivalent to no objection. 1 Ray, Texas Practice § 24 (3rd ed. 1980). We do not believe the trial judge acted improperly in overruling the objection. *Id.* § 25.

The judgment of the trial court is reversed and the cause is remanded.