United States Court of Appeals,

Fifth Circuit.

No. 94-60718.

BMG MUSIC;  Sony Music Entertainment, Inc., Plaintiffs-Appellees,

v.

Hugo Adrian MARTINEZ;  Martha Alicia Martinez, Defendants-Appellants.

Robbye R. Waldron, Trustee, Trustee-Appellee.

Feb. 6, 1996.

Appeal from the United States District Court for the Southern District of Texas.

Before POLITZ, Chief Judge, and WISDOM and STEWART, Circuit Judges.

WISDOM, Circuit Judge:

The defendants/appellants ask this Court to review the district court's award of summary judgment in favor of the plaintiffs/appellees.  After a review of the record, we find that the appellants did not produce facts sufficient to create a genuine issue of material fact and, accordingly, we AFFIRM.

I.

In August 1989, BMG Music and CBS Records, Inc.,[1] the plaintiff/appellees, filed suit against Musiofertas Cassettes (Musiofertas) for willful copyright infringement.  Hugo Adrian Martinez (Hugo), the defendant/appellant, and Julio Alvarez, his brother, were partners in this venture.  BMG and CBS personally served Hugo with a copy of the complaint on September 8, 1989.  Ten days later, on September 18, 1989, Hugo transferred five tracts of land, which are valued in excess of $800,000, to his sister, Martha Alicia Martinez, the co-defendant/appellant, for no consideration.  Hugo states that he was never directly involved in the operation of Musiofertas and relied on his brother's promise to tend to the matter.  Neither Hugo nor Julio, however, responded to plaintiffs' complaint.  On October 31, 1990, thirteen months after having filed suit, the plaintiffs obtained a default judgment against Hugo and Julio, as the partners of Musiofertas, in the amount of $450,000 for damages and

---

[1]CBS Records, Inc. subsequently became Sony Music Entertainment, Inc.

$8,224 for attorney's fees.

On December 14, 1992, the plaintiffs filed a suit from which this appeal arises against Hugo and Martha. The plaintiffs sought to void the September 18, 1989, property transfer from Hugo to Martha as a fraudulent transfer. Hugo and Martha admitted that Martha gave no consideration for the property, but denied that the transfer was an attempt to defraud Hugo's creditors; rather, the defendants assert that their father insisted that Hugo transfer the property to Martha to prevent Hugo's new wife from claiming an interest in the property in the event that their marriage soured.[2] Hugo admits that Martha agreed to reconvey a one-half interest in the property if the marriage was successful.

The plaintiffs moved for summary judgment. A federal magistrate considered the motion and submitted a report to the district court recommending that summary judgment be granted. Subsequently, both Hugo and Martha filed for bankruptcy under Chapter 7 of the United States Bankruptcy Code. The district court reviewed the motion de novo and granted summary judgment. The defendants then filed a motion for reconsideration, which the district court denied. The defendants now assert that the district court erred in granting the plaintiff's motion for summary judgment.[3]

II.

The de novo standard of review applies to the district court's decision to grant summary judgment.[4] This Court can affirm the district court's decision based on any legally sufficient ground,

---

[2]Hugo and his father allegedly discussed this transfer with an attorney nine to ten months before it occurred. They state that the delay between the meeting and the transfer stemmed from the death of Hugo's brother.

[3]Because the district court voided the transfer, Hugo regained title to the property in question. Robbye Waldron, the bankruptcy trustee overseeing Hugo's estate, gained control over the property. Waldron, after obtaining valid court orders, sold the property. The sale of the property, however, does not moot the issue in this case because the proceeds from the sale have not been distributed; thus, this Court's ruling effects the ownership of those proceeds but not the title held by the bona fide purchasers of that property.

[4]*Dupre v. Chevron U.S.A., Inc.,* 20 F.3d 154, 156 (5th Cir.1994).

even one not relied upon by the district court.[5]  When deciding this issue, this Court looks to the "pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits" to determine whether the appellant has established that genuine issues of material fact exist.[6]  Summary judgment is appropriate when the record does not contain evidence that would lead a reasonable jury to find in favor of the non-moving party.[7]

III.

The Uniform Fraudulent Transfers Act is designed to prevent debtors from transferring their property in bad faith before creditors can reach it.  With respect to the instant case, the relevant portion of the act provides:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose within a reasonable time before or after the transfer was made or the obligation was incurred, if the debtor made the obligation:
>
> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor....[8]

The statute aids the court in determining the debtor's actual intent by providing a list of factors that serve as "badges of fraud".[9]

The defendants admit numerous facts that constitute badges of fraud:  the transfer was to an insider (Hugo's sister), Hugo was sued shortly before he made the transfer, the transferred property

---

[5]*New Hampshire Ins. Co. v. Martech U.S.A., Inc.,* 993 F.2d 1195, 1200 (5th Cir.1993).

[6]FED.R.CIV.P. 56(c);  *see also Capital Concepts Properties 85-1 v. Mutual First, Inc.,* 35 F.3d 170, 174 (5th Cir.1994).

[7]*Capital Concepts,* 35 F.3d at 174;  *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (stating that summary judgment is not appropriate when "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party").

[8]TEX.BUS. & COM.CODE ANN. § 24.005(a)(1) (West 1987).  The district court based its decision upon TEX.BUS. & COM.CODE ANN. § 24.005(a)(2) as amended in 1993.  *See id.* § 24.005(a)(2) (West Supp.1995).  The amended provision provides that a transfer is fraudulent when the debtor does not receive reasonably equivalent consideration and believed or "reasonably should have believed" that he was about to incur a debt that he would be unable to pay.  *Id.*  The amended version of this statute, however, is not applicable in the instant case because the effective date, which is September 1, 1993, occurred after the transfer.  The district court, therefore, erred by relying on the "reasonably should have believed" language in the amended statute.

[9]*Id.* § 24.005(b).

constituted substantially all of Hugo's assets, Hugo became insolvent after the transfer and once the default judgment was rendered, and the transfer occurred shortly before Hugo became liable under the default judgment.[10] Additionally, the fact that Hugo did not receive any consideration for the transfer of this property to his sister also suggests that the transfer was not in the ordinary course of business.[11] While these facts do not constitute fraud per se,[12] they are sufficient to raise a strong inference of fraud.[13]

The defendants argue that summary judgment is never proper when the court must rule on whether the defendant had an "intent to defraud", asserting that this is an issue that must be decided by the trier of fact.[14] Intent to defraud, however, can be decided as a matter of law.[15] For example, summary judgment is appropriate in "intent to defraud" cases when the defendant admits the fraud, the conveyance instrument is fraudulent on its face, the defendant retains an interest in the property inconsistent with the conveyance alleged,[16] or the evidence indisputably reveals that the transfer was made without an intent to defraud.[17] Texas law, then, does not mandate that a case go to the jury

---

[10]*Id.* § 24.005(b)(1), (4), (5), (9), (10); *see also Texas Sand Co. v. Shield,* 381 S.W.2d 48, 52-53 (Tex.1964); *Adams v. Wilhite,* 636 S.W.2d 851, 855-56 (Tex.Ct.App.); *rev'd on other grounds,* 640 S.W.2d 875 (Tex.1982).

[11]*Id.* § 24.005(b) (stating that the list of indicia of fraudulent intent is not exclusive); *see also id.* § 24.005(a)(2) (providing that the debtor's failure to receive consideration for the transfer of property is one indicator of a fraudulent conveyance).

[12]*See Quinn v. Dupree,* 157 Tex. 441, 303 S.W.2d 769, 774 (1957) (stating that the existence of "fraudulent intent is only to be deduced from the facts and circumstances which the law considers as mere badges of fraud and not fraud per se, ... [requiring this issue] to be submitted to the trier of fact"); *Adams,* 636 S.W.2d at 856.

[13]*Adams,* 636 S.W.2d at 855-56; *see Roland v. United States,* 838 F.2d 1400, 1403 (5th Cir.1988).

[14]*See Grand Prairie Indep. Sch. Dist. v. Southern Parts Imports, Inc.,* 803 S.W.2d 762, 765 (Tex.Ct.App.), *aff'd in part, rev'd in part on other grounds,* 813 S.W.2d 499 (Tex.1991); *Letsos v. H.S.H., Inc.,* 592 S.W.2d 665, 670 (Tex.Ct.App.1979).

[15]*Connell v. Connell,* 889 S.W.2d 534, 542 (Tex.Ct.App.1994).

[16]*Letsos,* 592 S.W.2d at 670.

[17]*Connell,* 889 S.W.2d at 542; *Southwestern Paper Co. v. Campbell,* 97 S.W.2d 520, 522 (Tex.Ct.App.1936).

merely because one of the elements of the claim is intent to defraud.

The defendants, while admitting the above facts, assert that the transfer occurred at the insistence of their father. In his answers to the plaintiffs' interrogatories, Hugo states that his father wanted the property transferred to Martha to ensure that Hugo's wife could not claim any of the proceeds from that property in the event that Hugo and his wife obtained a divorce.[18] The defendants assert that this Court must consider the statements made in Hugo's answers to the interrogatories in the light most favorable to them and draw the inference that Hugo transferred the property to appease his father, not to defraud the plaintiffs.[19]

The ultimate determination to be made by this Court, however, is whether the defendants have put forth sufficient facts to "lead a rational jury to find for [the defendants]".[20] The numerous badges of fraud, which the defendants admit, make out a strong case that Hugo had an intent to defraud the plaintiffs.[21] Considering that the only evidence in support of the defendants' theory is a conclusory, self-serving statement by the defendant Hugo, the inference that the defendants ask this Court to make is unreasonable. The record contains no other evidence to overcome the strong inference of fraud raised by Hugo's admissions; thus, a reasonable jury could only find that the transfer by Hugo was made with the intent to "hinder, delay, or defraud" the plaintiffs. Accordingly, the district court's

---

[18]The record also contains answers to interrogatories and an affidavit by Martha in which she also states that her father insisted on the transfer. This Court, however, cannot consider her answers or affidavit with respect to this assertion because it is not clear that Martha has personal knowledge of any agreement between her brother and father with respect to this transaction. *See* FED.R.CIV.P. 56(e); *Akin v. Q-L Investments, Inc.,* 959 F.2d 521, 530 (5th Cir.1992); *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 49 (1st Cir.1990). In the interrogatories, Martha did execute a statement declaring that she has personal knowledge of all facts contained therein, but her answers also state Hugo provided her with information to complete the answers. Given the inconsistencies of these statements and no comparable declaration of personal knowledge in the affidavit, this Court cannot consider those materials.

[19]*Capital Concepts,* 35 F.3d at 174.

[20]*Id.*

[21]*Adams,* 636 S.W.2d at 856. Hugo, by his own admission, also retained an interest in the transferred property that is inconsistent with a true conveyance. This interest is in the form of an agreement between Hugo and Martha under which she promised to reconvey a one-half property interest to Hugo once his marriage became established. Such an agreement is inconsistent with a bona fide conveyance and, in itself, is strongly indicative of fraud. *See Letsos,* 592 S.W.2d at 670.

decision to grant summary judgment is AFFIRMED.