In the
# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 31, 2006**

Charles R. Fulbruge III
Clerk

———————

m 05-31107

———————

IN RE:
PHILLIPS AND HORNSBY LITIGATION.

KAREN HORNSBY KIRKWOOD, ETC.; ET AL.,

Plaintiffs,

VERSUS

PAUL D. GLASS; ET AL.,

Defendants.

* * * * * * * * * * * * * *

IN RE:
FRAUDULENT TRANSFER.

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

RYAN PHILLIPS; ET AL.,

Defendants,

RYAN PHILLIPS AND GREGORY PHILLIPS,

Defendants-Appellants.

Appeal from the United States District Court
for the Middle District of Louisiana
ᗰ 3:03-CV-3231

Before JONES, Chief Judge, SMITH and
    STEWART, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Defendants appeal a summary judgment voiding a transfer of property from Chaney Phillips to his sons Gregory and Ryan. We affirm.

I.

On April 21, 1998, Chaney Phillips was convicted of, *inter alia*, mail fraud and money laundering in violation of 18 U.S.C. §§ 1341 and 1957, respectively. Before sentencing, a probation officer met with him to determine the value of his financial assets for inclusion in a presentence investigation report ("PSR"). In answer to a specific question about inherited property, Phillips disclosed that he had a five percent interest in a succession from his friend Stanley Hornsby but claimed the interest was of small value and was entangled in litigation. Based on these representations, the officer assumed the interest was *de minimis* and did not include it in the PSR. Actually, however, months before Phillips's conversation with the probation officer, the litigation had been completed, and Phillips had been awarded $32,600,

which was an amount roughly equal to the remainder of his net worth.

On June 26, 1998, the probation officer presented Phillips with the PSR, including information about what restitution he might be obligated to pay. Phillips objected to several aspects of the report, including the amount and recipients of the possible restitution. The PSR was duly amended on July 24 to include Phillips's objections.

On the morning of July 30, the day of Phillips's scheduled sentencing, he executed an *inter vivos* donation of his interest in the Hornsby succession to his sons. Later that day, he was sentenced to 97 months' incarceration and $225,587.56 in restitution. At no time during his sentencing hearing did he disclose the donation he had made that morning.

Phillips appealed his convictions and initial sentence. Certain of his convictions were vacated, and on November 20, 2000, he was resentenced to pay $217,587.56 in restitution.

When it discovered Phillips's gift, the government brought this action, alleging that the conveyance constituted a fraudulent transfer under the Federal Debt Collection Practices Act ("FDCPA"), 28 U.S.C. § 3302 *et seq.*, which permits the government to avoid "transfer[s] or obligation[s] to the extent necessary to satisfy [a] debt to the United States." 28

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

U.S.C. § 3306(a)(1).[2] On October 31, 2003, the government moved for summary judgment, which was denied because the district court found that there was a genuine dispute of material fact as to whether Phillips had transferred the property with fraudulent intent.

The government moved for reconsideration and submitted a redacted version of the PSR in support. Finding that the PSR demonstrated conclusively that Phillips had been informed of the likelihood of restitution before the transfer, the court granted summary judgment as to the claim of a fraudulent transfer in violation of 28 U.S.C. § 3304. Only Phillips's sons appeal, contending that the PSR was improperly admitted into evidence and that, even considering the PSR, a genuine dispute of material fact exists with regard to Phillips's intent in making the transfer.

## II.

The sons object to the relevance of and redactions to the PSR and to the authenticity of the document under Federal Rule of Evidence 901. We agree with the district court that defendants waived their objections to the relevance of the document and the redactions thereto; we review the district court's application of rule 901 for abuse of discretion. *See R.R. Mgmt. Co., L.L.C. v. CFS La. Midstream Co.*, 428 F.3d 214, 220 (5th Cir. 2005). We will reverse only where we determine that an error was prejudicial. *See United States v.*

---

[2] Private restitution orders may be recovered in the same manner as the statute provides for "debt[s] to the United States." *See* 18 U.S.C. § 3664(m)(1)(A)(i)-(ii) (stating that the United States is authorized to enforce victim restitution orders by the same means as it recovers fines); *United States v. Phillips*, 303 F.3d 548, 550-51 (5th Cir. 2002).

*Scott*, 678 F.2d 606, 612 (5th Cir. 1982) (stating that rule 901 error is subject to harmless error analysis).

We agree with the district court that defendants had ample opportunity to object to the relevance and content of the PSR and failed to do so. The government informed defendants and the court that it intended to introduce the redacted PSR, and it disclosed specifically which portions it intended to include.

Pursuant to Local Rule 7.5M, the court required that any objections be filed within twenty days of March 27, 2004. Defendants filed no objection until January 24, 2005; they supply no plausible reason why they could not have objected to the relevance of or redactions to the PSR within the time allotted by the district court. Accordingly, we affirm the finding of waiver as to these issues.

We need not decide whether defendants waived their objection to the authenticity of the copy of the PSR that the government introduced or whether the admission of the PSR was error under rule 901. That is because any error was harmless. Phillips has actually seen the PSR and on appeal his sons raise no genuine issue of fact as to the authenticity of the document.

Thus, any error committed in admitting the copy of the PSR without certification was harmless. Likewise, defendants have supplied no reason to believe that admitting copies in lieu of the original was unfair; accordingly, we also reject their challenge based on Federal Rule of Evidence 1003.

## III.

The Phillips sons contend that, even considering the PSR as properly admitted into

3

evidence, summary judgment is inappropriate because there is a genuine dispute as to Phillips's intent in making the transfer. We disagree. Analyzing a Texas statute that was, in all relevant respects, identical to the FDCPA, this court stated that "[i]ntent to defraud . . . can be decided as a matter of law" where numerous "badges of fraud"[3] are present and the only evidence in support of the defendant's theory is a series of conclusional, self-serving statements. *BMG Music v. Martinez*, 74 F.3d 87, 90-91 (5th Cir. 1996).

As in *BMG Music*, six of the eleven listed badges of fraud are present: (1) The transfer occurred shortly before or after the debt was incurred; (2) Phillips received no reasonably equivalent value for the transfer; (3) the transfer was made to "insiders"; (4) Phillips was insolvent at the time of the transfer; (5) he concealed the transfer by failing to disclose it at his sentencing;[4] and (6) he concealed his retirement account with the Louisiana Tax Assessors' Office. *See* 28 U.S.C. § 3304(b)(2). In addition to these nonexclusive statutory factors, Phillips mischaracterized his succession interest when he met with the officer developing the PSR, describing it as speculative and of small value. He also failed to disclose at the sentencing that he had executed a $100,000 second mortgage on his house only two days earlier.

Although there are some differences between this case and *BMG Music*SSfor example, the defendant in *BMG Music* admitted that he retained an interest in the transferred property, *see BMG Music*, 74 F.3d at 91 n.21, these distinctions are insignificant to the outcome of this case. The same number of badges of fraud are present, and the inference of fraud is similarly inescapable.

None of defendants' self-serving statements that Phillips lacked intent to defraud is enough

---

[3] The FDCPA states, in determining actual intent, that special consideration may be given to certain "badges of fraud" such as whether

(A) the transfer or obligation was to an insider; (B) the debtor retained possession or control of the property transferred after the transfer; (C) the transfer or obligation was disclosed or concealed; (D) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (E) the transfer was of substantially all the debtor's assets; (F) the debtor absconded; (G) the debtor removed or concealed assets; (H) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (I) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (J) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (K) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

28 U.S.C. § 3304(b)(2).

[4] Defendants' contention that Phillips disclosed the transfer because he made the transaction public under Louisiana law is without merit. The fact that Phillips recorded the transaction and thus publicized it to the minimum extent necessary to achieve a valid transfer under Louisiana law is insufficient to constitute "disclosure" under the statute where he failed to inform the sentencing court, the United States, or even any of the persons to whom he owed restitution. *See, e.g.*, LSA-C.C. art. 2442 (stating that concealed transfers of property are ineffective with respect to third parties such as creditors).

4

to overcome the objective evidence.[5] It is implausible that Phillips did not know the difference between a fine, which he had been informed that he was unlikely to have to pay, and restitution. It is scarcely credible that he did not realize that he would likely be forced to make some restitution. He had been shown the PSR, he knew was likely to be ordered to pay restitution, and he transferred his interest in the Hornsby succession to his sons to avoid forfeiting it to his likely creditors. The numerous indicia of fraudulent intent make summary judgment appropriate.

AFFIRMED.

---

[5] *See In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000) ("A party's self-serving and unsupported claim that [he] lacked the requisite intent is not sufficient to defeat summary judgment where the evidence otherwise supports a finding of fraud.").