UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 91-1965

_____


CAPITAL CONCEPTS PROPERTIES 85-1,
a California limited partnership,
on its own behalf and as liquidating
trustee for CORPORATE I, LTD., ET AL.,

                              Plaintiffs-Appellants,

                    versus

MUTUAL FIRST, INC., RESOLUTION TRUST
CORPORATION, as Receiver for Sunbelt
Savings, FSB and the FEDERAL DEPOSIT
INSURANCE CORPORATION, Receiver for
Sunbelt Savings Association of Texas,

                              Defendants-Appellees.

_____

Appeal from the United States District Court for the
            Northern District of Texas
_____

( September 30, 1994 )


Before GARWOOD and BARKSDALE, Circuit Judges, and WALTER,[*] District
Judge.

GARWOOD, Circuit Judge:

     Plaintiffs-appellants Capital Concepts Properties 85-1 (CapCon

85-1) and Capital Concepts Properties 85-1D (CapCon 85-1D)

(collectively referred to as "CapCon") appeal the district court's

_____

[*]     District Judge of the Western District of Louisiana, sitting
by designation.

grant of summary judgment to defendants-appellees Mutual First, Inc. (Mutual First) and the Federal Deposit Insurance Corporation (FDIC), as Receiver for Sunbelt Savings Association of Texas and as Manager of the FSLIC Resolution Fund. We affirm.

## Facts and Proceedings Below

On December 26, 1984, CapCon became the sole limited partner of Corporate I, a Texas limited partnership organized to construct the building that came to be known as Corporate I Plaza in Dallas, Texas (the Plaza). CapCon's investment in Corporate I consisted of a $1 million cash capital contribution and a capital contribution in the form of its $9 million promissory note payable to Corporate I and secured by CapCon's 90,000 shares of stock in Sunbelt Savings Association of Texas (Old Sunbelt).[1] Old Sunbelt was the sole general partner of Corporate I. One month prior to CapCon's involvement in Corporate I, Corporate I obtained from San Jacinto Savings Association (San Jacinto) a $76 million loan to construct the Plaza and an agreement from San Jacinto to provide permanent financing. In exchange for the loan, Corporate I gave San Jacinto a promissory note secured by a deed of trust listing the Plaza as collateral (the San Jacinto Note).

In the fall of 1987, CapCon and Old Sunbelt learned that the Plaza would not be ready for occupancy and that Corporate I would not be able to pay off the San Jacinto Note when it matured on

---

[1]     Capcon never paid off its obligation to Corporate I under the note. Instead, prior to placing Corporate I into bankruptcy, Capcon, acting as the liquidating trustee for Corporate I, foreclosed upon the worthless stock of Old Sunbelt and forgave itself its $9 million obligation on the note.

November 29, 1987. San Jacinto refused to extend the loan or fund its permanent loan commitment. Consequently, CapCon and Old Sunbelt entered into negotiations with each other regarding a possible restructure of Corporate I. These negotiations, in which the parties were represented by their respective counsel, lasted from September 1987 until November 25, 1987. During the negotiations, CapCon asserted that the Corporate I partnership agreement required Old Sunbelt to make a capital contribution to satisfy Corporate I's operating deficit, including payment of the San Jacinto Note. Old Sunbelt disagreed with CapCon's interpretation of the partnership agreement and represented that it would not and could not make such a contribution because of its supervisory agreement with the FSLIC.[2]

In spite of its contention that Old Sunbelt's refusal to make the capital contribution was a breach of the partnership agreement, CapCon did not sue Old Sunbelt for specific performance or breach of contract. Instead, on November 25, 1987, CapCon executed a letter agreement in which CapCon (1) consented to the purchase of the San Jacinto Note by Old Sunbelt or one of its subsidiaries and (2) agreed not to interfere with any attempt by Old Sunbelt or one of its subsidiaries to foreclose on the Plaza after February 28, 1988. The agreement also provided that CapCon and Old Sunbelt would negotiate for certain modifications in the partnership agreement but that, in the event agreement could not be reached,

---

[2] Under the supervisory agreement, Old Sunbelt had no authority to make a capital contribution to Corporate I to pay off the San Jacinto note.

3

Old Sunbelt would have the same rights on the note possessed by the previous lender, San Jacinto. Additionally, CapCon agreed that if Old Sunbelt exercised its rights as lender, CapCon would not assert that Old Sunbelt was not entitled to those rights or that Old Sunbelt had breached any duty owed to CapCon as general partner of Corporate I.

On November 29, 1987, with the consent of the FSLIC, Mutual First, a wholly owned subsidiary of Old Sunbelt, purchased the San Jacinto Note for $60 million. Mutual First borrowed from Old Sunbelt the funds used to purchase the San Jacinto Note. After Mutual First acquired the San Jacinto Note, Corporate I completed construction of the Plaza and obtained a certificate of occupancy, but was unable to lease the building.

On August 19, 1988, the Federal Home Loan Bank Board (FHLBB) declared Old Sunbelt insolvent and appointed the FSLIC as Receiver of the institution.[3] On the same day that the FHLBB declared Old Sunbelt insolvent, Sunbelt Savings, FSB (New Sunbelt), a mutual savings bank, acquired all assets of Old Sunbelt pursuant to a purchase and assumption agreement between New Sunbelt and the FSLIC.

As part of the purchase agreement, New Sunbelt acquired all of the stock of Mutual First as well as the obligation owed by Mutual First to Old Sunbelt for the $60 million loan used to purchase the

---

[3] Under the terms of the partnership agreement, Corporate I dissolved upon Old Sunbelt's insolvency, and has been placed into bankruptcy. Corporate I's bankruptcy proceeding has been stayed pending the resolution of this action. CapCon is the liquidating trustee for Corporate I.

San Jacinto Note. On December 29, 1988, Mutual First executed a promissory note to New Sunbelt evidencing the $60 million obligation (the Mutual First Note). On December 30, 1988, New Sunbelt sold the Mutual First Note to FSLIC-Corporate. The Mutual First Note is now owned and held by the FDIC, as manager of the FSLIC Resolution Trust Fund, the statutory successor to FSLIC-Corporate.

Mutual First continues to hold the San Jacinto Note. Because Mutual First's second parent, New Sunbelt, recently has been placed into receivership, Mutual First is now owned by the RTC as receiver for New Sunbelt.

No payments have been made on the San Jacinto Note, and on August 5, 1989, Mutual First initiated an action to foreclose on the deed of trust. In response, on August 31, 1989, CapCon initiated an action in Texas state court against Mutual First, the FDIC, and the RTC. The Texas court granted CapCon a temporary restraining order enjoining a foreclosure sale scheduled for September 5, 1989. Thereafter, the FDIC removed the case to federal court.

In their action against the defendants, CapCon sought a declaratory judgment that the $60 million Old Sunbelt loaned to Mutual First was a capital contribution to Corporate I which extinguished the underlying deed of trust and Mutual First's right to foreclose. Alternatively, CapCon requested that Corporate I's debt to Mutual First be set off against Mutual First's debt to Old Sunbelt, or that the defendants' claims against Corporate I be equitably subordinated to CapCon's claim for return of its capital

5

contribution.[4] CapCon based its equitable subordination claim upon its assertion that, during the negotiations leading up to CapCon's execution of the letter agreement, Old Sunbelt fraudulently concealed a "secret agreement" between Old Sunbelt and San Jacinto for certain additional collateral pledged to secure the San Jacinto Note. After discovery, the FDIC, Mutual First, and CapCon moved for summary judgment.

On August 7, 1991, the district court granted summary judgment in favor of the FDIC and Mutual First and denied CapCon's motion for summary judgment. The court held, *inter alia*, that (1) CapCon's claim that the loan from Old Sunbelt to Mutual First was a capital contribution to Corporate I is barred by the explicit terms of the letter agreement as well as the *D'Oench, Duhme* doctrine; (2) CapCon is not entitled to force setoff of the promissory notes to which it is not a party and, even if it were so entitled, the parties to the two debts had no mutuality of obligation; and (3) CapCon is not entitled to equitable subordination of any claims against Corporate I because CapCon offered no competent summary judgment evidence that the letter agreement was induced by fraud, and because any such allegation would be barred by the *D'Oench, Duhme* doctrine. CapCon now appeals the district court's decision.

---

[4] Capcon also asserted various claims for breach of fiduciary duty and conspiracy. CapCon, however, does not appeal the district court's denial of these claims.

**Discussion**

Standard Of Review

This case comes to us from a grant of summary judgment against the party with the burden of proof at trial. Summary judgment is proper after adequate time for discovery and upon appropriate motion against a party which fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. FED. R. CIV. P. 56(c). If the nonmoving party bears the burden of proof on the issue at trial, "the burden on the moving party may be discharged by 'showing'SQthat is, pointing out to the district courtSQthat there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 106 S.Ct. 2548, 2554 (1986).

Once the movant has pointed out that the nonmoving party's case is deficient, the nonmoving party has the burden of establishing the existence of material factual issues. In its assessment of the motion, the court is not required to contain its review of the record to those portions to which the moving party refers. Indeed, a "[summary judgment] motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id*. at 2553.

In reviewing the summary judgment, we review the record *de novo*, *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 113 S.Ct. 82 (1992), and we apply the same standard of review as did the district court. *Waltman v. International Paper*

*Co.*, 875 F.2d 468, 474 (5th Cir. 1989). In reviewing the record we must "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986) (citation omitted). If the record taken as a whole could not lead a rational jury to find for the nonmoving party, there is no genuine issue for trial. *Boeing Co. v. Shipman*, 411 F.2d 365, 374-75 (5th Cir. 1969) (*en banc*). Moreover, "[s]uch a finding may be supported by the absence of evidence to establish an essential element of the nonmoving party's case." *Hibernia Nat'l Bank v. Carner*, 997 F.2d 94, 98 (5th Cir. 1993) (citations omitted).

I. Setoff

CapCon's first point of error on appeal is that the district court improperly concluded that the defendants were entitled to summary judgment on CapCon's claim for setoff. The district court granted summary judgment against CapCon for its setoff claim for two independent and dispositive reasons. First, CapCon is not a party to the debts it seeks to set off. Second, there is no mutuality of obligation between the two debts.

CapCon disagrees with the district court's conclusions. CapCon argues that because Old Sunbelt lent Mutual First the funds used to purchase the San Jacinto Note, and because Old Sunbelt was severally liable under the San Jacinto Note as general partner of Corporate I, the obligation of Mutual First to Old Sunbelt under the Mutual First Note should be set off against the obligation of Corporate I to Mutual First under the San Jacinto Note. CapCon contends that an identity existed between Corporate I and Old

8

Sunbelt, which created the mutuality required to establish the right of setoff between the parties.

Our analysis of CapCon's claim for setoff is guided by Texas law. *InterFirst Bank Abilene v. FDIC*, 777 F.2d 1092 (5th Cir. 1985). Setoff is a form of equitable counterclaim which brings together obligations of parties opposing each other and, by judicial action, makes each obligation extinguish the other. *See* 67 Tex. Jur. 3d § 3 *Setoffs, Counterclaims, and Cross Actions* (1989). The object of equitable setoff is "to adjust the demands between the parties and allow a recovery of only the balance that is due." *Anderson v. Vinson Exploration, Inc.*, 832 S.W.2d 657, 666 (Tex. App.SQEl Paso 1992, writ denied) (citing *CPS Int'l, Inc. v. Harris & Westmoreland*, 784 S.W.2d 538, 544 (Tex. App.SQTexarkana 1990, no writ)). "In order for one demand to be set off against another, both demands must mutually exist between the same parties." *Dallas/Fort Worth Airport Bank v. Dallas Bank & Trust Co.*, 667 S.W.2d 572, 575 (Tex. App.SQDallas 1984, no writ) (citing *Western Shoe Co. v. Amarillo Nat'l Bank*, 94 S.W.2d. 125, 128 (Tex. Comm'n App. 1936, opinion adopted)). Indeed, setoff "is proper only where demands are mutual, between the same parties, and in the same capacity or right." *Brook Mays Organ Co., Inc. v Sondock*, 551 S.W.2d 160, 166 (Tex. Civ. App.SQBeaumont 1977, writ ref'd n.r.e.).

The demands CapCon seeks to set off are not strictly mutual, and the parties involved in the transactions are not identical. The demand evidenced by the San Jacinto Note involves a debt Corporate I owed to San Jacinto and now owes to Mutual First; the demand evidenced by the Mutual First Note involves a debt Mutual

9

First owed to Old Sunbelt and then to New Sunbelt and now owes to the FDIC as manager of the FSLIC Resolution Trust Fund.  Contrary to CapCon's argument, Old Sunbelt's secondary liability (as general partner of Corporate I) on the San Jacinto Note does not appear to create a sufficient identity between Old Sunbelt and Corporate I for the purpose of establishing mutuality.  CapCon's premise that the debt owed to a partnership creditor (Mutual First) may be set off against the claim of an individual partner (Old Sunbelt) against the partnership creditor does not find any clear support in the decided cases.[5]  CapCon relies on four cases, but they, at best, support CapCon's position only by analogy.  Moreover, all the cases cited in this respect by CapCon, save one, are pre-1940 decisions, and none of them are from either Texas or this Circuit.[6]

Even if a sufficient identity existed between Old Sunbelt and Corporate I, however, Old Sunbelt was not acting in the same capacity with respect to the two debts, and they arose from separate transactions.  In lending funds to Mutual First for the purchase of the San Jacinto Note, Old Sunbelt was acting in its capacity as a *lending institution*.  In contrast, any obligation Old Sunbelt had under the San Jacinto Note was incurred three years earlier in a separate transaction and in its capacity as *general*

---

[5]   This assertion is especially suspect when, as here, the partner with the claim against the partnership creditor is not asserting the right of setoff.

[6]   The cases CapCon cites are: *Davis v. Bessemer City Cotton Mills*, 178 F. 784 (4th Cir. 1910); *Wisdom v. Guess Dry Cleaning Co.*, 5 F.Supp. 762 (S.D. Miss. 1934); *Boeger & Buchanan v. Hagen*, 215 N.W. 597 (Iowa 1927); and *Garringer v. Hurn*, 462 P.2d 556 (Wash. App. 1969).

*partner in a real estate development partnership*.[7]  Hence, it appears CapCon cannot establish the reciprocity of obligation required to assert the equitable counterclaim of setoff.

Moreover, in these circumstances we should not stretch to find mutuality or reciprocity because in any event it would be inequitable to allow CapCon to assert setoff.  CapCon raised its claims for setoff over one year after Old Sunbelt was declared insolvent and all of Old Sunbelt's assets, including Mutual First and the Mutual First Note, were acquired by New Sunbelt, which thereafter sold the Mutual First Note to FSLIC-Corporate.  We see no equity in allowing CapCon to assert a defense against the exercise of Mutual First's rights under the San Jacinto Note, and extinguish the Mutual First Note, long after New Sunbelt purchased Mutual First for consideration and likewise long after FSLIC-Corporate (now FDIC as manager of the FSLIC Resolution Trust Fund) purchased for consideration the Mutual First Note from New Sunbelt.

II.  Equitable Subordination

CapCon's second point of error is that the district court improperly concluded that the *D'Oench, Duhme* doctrine barred CapCon's request for equitable subordination of Mutual First's claims against Corporate I. CapCon's equitable subordination claim is based upon an alleged fraudulent omission by Old Sunbelt regarding a "secret agreement" between Old Sunbelt and San Jacinto for certain additional collateral pledged to secure the San Jacinto

---

[7]    Old Sunbelt's liability on the note, however, would be triggered only if and to the extent the collateral securing the San Jacinto Note is insufficient to satisfy payment of the Note.

11

Note.  In dismissing CapCon's request for equitable subordination of Mutual First's claims, however, the district court did not rely solely on *D'Oench, Duhme*.[8]  Indeed, the primary reason given by the court for dismissing the equitable subordination claim is that "[CapCon has] not offered competent summary judgment evidence to support a finding that Mutual First or [Old] Sunbelt fraudulently induced CapCon to sign the letter agreement."  The court then noted that, even if CapCon *had* produced evidence to overcome summary judgment on its assertion of fraud, "any such allegations would be barred by the *D'Oench, Duhme* doctrine."

Because the district court based its decision to grant summary judgment on CapCon's equitable subordination claim on a ground separate from and independent of the *D'Oench, Duhme* doctrine, and because CapCon has failed to challenge on appeal the court's conclusion that CapCon did not offer competent summary judgment evidence of Old Sunbelt's fraud, even if we were to find that the district court erred in its application of *D'Oench, Duhme* to the instant case, the district court's judgment would still stand.[9]

---

[8]    CapCon does not appeal the district court's dismissal of its equitable subordination claim against the FDIC.  The court dismissed CapCon's equitable subordination claim against the FDIC because, as the court noted, "[n]either FDIC Receiver nor FDIC Manager has asserted any claims with respect to the San Jacinto Note, the Plaza, or Corporate I."

[9]    CapCon contends, *inter alia*, that although *D'Oench, Duhme* applies to affirmative misrepresentations, the doctrine should not apply to so-called "passive fraud"; *i.e.*, fraud through nondisclosure.  We note, however, that this argument does not take into account the purpose of the *D'Oench, Duhme* doctrine, which protects the FDIC from having to defend against claims based on secret agreements between a party and a federally insured bank that later fails, and "ensure[s] that FDIC examiners can accurately assess the condition of a bank based on its

12

*See Matter of Texas Mortgage Servs. Corp.*, 761 F.2d 1068, 1073 (5th Cir. 1985) (noting that issues not raised on appeal in the brief of the appellant may be considered waived, and thus cannot be noticed or entertained by the Court of Appeals).  Therefore, we need not reach the merits of CapCon's second point of error, and the decision of the district court on CapCon's equitable subordination claim is affirmed.

## Conclusion

For the reasons stated above, the judgment of the district court is

AFFIRMED.

---

books."  *Bowen v. Federal Deposit Ins. Co.*, 915 F.2d 1013, 1016 (5th Cir. 1990).