IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-60264
_____

AUDREY YOUNG, Individually, and as guardian and next
friend of Shana Young, Magan Young and Alex Young, Jr.,
minors and as Administratrix of the estate of Alex Young,
deceased, and as personal representative of the heirs and law
of Alex Young, deceased,

                                        Plaintiff-Appellant,

versus

GEORGE ROBINSON, M.D. and MICHAEL MOSES, M.D.,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Mississippi
(1:95-CV-153-R-R)
_____

June 2, 1999

Before REAVLEY, POLITZ and SMITH, Circuit Judges.

REAVLEY, Circuit Judge:[*]

    In this diversity case under Mississippi law, the plaintiffs asserted a wrongful death claim

as survivors Alex Young, who died of cancer. The basis of the claim is the alleged medical

malpractice of two physicians, George Robinson and Michael Moses, in their treatment of Young.

The district court granted summary judgment in favor of defendants. While we do not agree with

the entire analysis employed by the district court, we conclude that summary judgment was

properly granted and accordingly affirm.

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

BACKGROUND

The summary judgment record shows the following. Mr. Young was a patient of Dr. Robinson in February-April 1993. Young complained of abdominal pain. Tests indicated a diseased gall bladder. On March 26 Dr. Robinson reviewed a CT scan also indicating a lesion in the head of the pancreas. Young was referred to Dr. Moses, a surgeon. Dr. Moses removed Young's gall bladder. During surgery he found a cystic mass in the head of the pancreas. He aspirated (removed fluid) from the cyst with a needle. The fluid was sent to the hospital pathology lab. The pathologist reported: "Rare cluster of atypical ductal cells identified; although cells with these features may be seen in chronic pancreatitis, the possibility of neoplasm [i.e. tumor] cannot be entirely excluded on this material." Dr. Robinson's discharge summary noted the cystic mass found at the head of the pancreas, and stated that the fluid removed from the mass "was nonproductive for malignant cells."

In August of 1993 Young visited the Digestive Health Center in Mississippi because of persistent abdominal pain. An endoscopic procedure was performed, which found a "large friable mass" at the ampulla of Vater (discussed further below.) A biopsy of the ampulla was sent to a pathologist, who diagnosed poorly differentiated adenocarcinoma, a form of cancer. In September of 1993 Young underwent surgery. The surgeon found a "large carcinoma of the pancreas," and that the cancer had spread to the liver. Young died of cancer on February 13, 1994.

Young's survivors sued Drs. Robinson and Moses for medical malpractice. The defendants moved for summary judgment on the issue of damages causation, submitting affidavits from three physicians in support of the motion, as well as statistical evidence on cancer survival rates. The three physicians concluded that (1) prior to surgery by Dr. Moses, Young already suffered from cancer of the pancreas, and (2) due to the exceptionally poor prognosis for patients suffering from pancreatic cancer and other factors, there was no appropriate medical treatment which should have been done and which would have increased Young's chances of survival.

2

In response to the summary judgment motion, plaintiffs submitted two affidavits from physicians. Dr. Sodeman agreed with defendants' experts that at the time of the March surgery Young already suffered from cancer. However, Sodeman was of the view that the cancer had not metastasized at the time, that defendants were negligent in failing to pursue further testing to confirm the cancer, and that radical surgery "would have afforded a cure and in any event should have greatly increased life expectancy." The other expert for plaintiffs, Dr. Anderson, agreed with all the other experts that cancer was present in March 1993, and agreed with Dr. Sodeman that such cancer should have been diagnosed and treated at that time. Anderson opined that with correct diagnosis and treatment by defendants, the cancerous mass should have been resected (removed by surgery), and that the failure to pursue such treatment, "resulted in the loss of a reasonable probability of substantial improvement in the patient's condition."

The district court reopened discovery to allow the parties to depose each other's experts. Defendants deposed plaintiffs' experts; plaintiffs did not depose defendants' experts. The district court reviewed the summary judgment evidence and concluded that, under Mississippi law, plaintiffs must show that the defendants' failure to treat Young resulted in the loss of a reasonable probability of substantial improvement of his condition. The court further held that under this standard and the federal standard for admitting expert testimony, the plaintiffs had failed to offer evidence on causation sufficient to allow the matter to proceed to a jury. Accordingly the district court granted summary judgment for defendants.

DISCUSSION

Summary judgment is appropriate if the record discloses "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1] Under modern summary judgment practice, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence

---

[1] Fed. R. Civ. P. 56(c).

3

is merely colorable, or is not significantly probative, summary judgment may be granted."[2]  If the record as a whole could not lead a rational jury to find for the nonmoving party, there is no genuine issue for trial and summary judgment is warranted.[3]

Our review of the summary judgment requires us to follow both Mississippi law governing the proof required to prevail in a medical malpractice case, and federal law governing the admissibility of expert testimony.  In *Clayton v. Thompson*,[4] the Mississippi Supreme Court held that a plaintiff cannot recover in a medical malpractice case "because of mere diminishment of the 'chance of recovery.'  Recovery is allowed only when the failure of the physician to render the required level of care results in the loss of a reasonable probability of substantial improvement of the plaintiff's condition."[5]  The Mississippi Supreme Court later held:

> Many other courts have adopted the [*Clayton*] rule, often enunciated as follows:
> "[A]dequate proof of proximate cause in a medical malpractice action of this type
> requires evidence that in the absence of the alleged malpractice, a better result was
> probable, or more likely than not."  Some courts have held that the plaintiff has to
> supply evidence that proper treatment would have provided the patient "with a
> greater than fifty (50)  percent chance of a better result than was in fact obtained."
> The *Clayton* decision clearly placed the Mississippi rule in alignment with these
> jurisdictions, and rejected the notion that a mere "better result absent malpractice"
> would meet the requirements of causal connection.[6]

The admission of expert testimony in governed by the Federal Rules of Evidence and federal decisions interpreting the Rules.  In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,[7] the the Supreme Court reviewed the admissibility of scientific evidence under Fed. R. Evid. 702.  The Court held that the district court has a gatekeeping role to "ensure that any and all scientific

---

[2]  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).

[3]  *Capital Concepts Properties 85-1 v. Mutual First, Inc.*, 35 F.3d 170, 174 (5th Cir. 1994).

[4]  475 So.2d 439 (Miss. 1985).

[5]  *Id*. at 445.

[6]  *Ladner v. Campbell*, 515 So.2d 882, 889 (Miss. 1987) (citations omitted).

[7]  509 U.S. 579 (1993).

4

evidence admitted is not only relevant, but reliable."[8]   The decision to admit or exclude evidence under *Daubert* is reviewed for abuse of discretion.[9]  "The admission or exclusion of expert testimony is a matter left to the discretion of the trial court, and that decision will not be disturbed on appeal unless it is manifestly erroneous."[10]

We conclude that the district court did not manifestly err in ruling that the opinions of plaintiffs' experts, to the effect that a different treatment of Young by defendants would have substantially improved Young's condition, were not sufficiently reliable to warrant admission into evidence.  The court correctly noted that under Mississippi law the plaintiff must prove that the physician's failure to render proper care resulted in the loss of a reasonable probability of substantial improvement of the plaintiff's condition, and that this standard requires proof of a "greater that fifty (50) percent chance of a better result than was in fact obtained."[11]

The court considered data from two published works, Shackelford's Surgery of the Alimentary Tract and Harrison's Principles of Internal Medicine, as well as published data of the National Cancer Institute, commonly known as SEER data.  Given that the two texts were published, peer-reviewed works, that plaintiffs' own experts had relied upon, and that SEER data is widely accepted by the medical community as accurate and reliable, the court did not err in considering this data.

All of the experts for plaintiffs and defendants agreed that Young suffered from cancer at the time Dr. Moses operated on him.  Indeed, plaintiffs' suit is premised on the allegations that Young not only suffered from cancer at the time, but that defendants should have identified it and taken measures to treat it.  The SEER data show that cancer of the pancreas is the most deadly

---

[8]  *Id*. at 589.

[9]  *General Elec. Co. v. Joiner*, 118 S. Ct. 512, 515 (1997).

[10] *Eiland v. Westinghouse Elec. Corp.*, 58 F.3d 176, 180 (5th Cir. 1995).  *See also Christophersen v. Allied-Signal Corp.*, 939 F.2d 1106, 1109 (5th Cir. 1991).

[11] *Ladner*, 515 So.2d at 889.

form of cancer, with a five-year survival rate of 4-5 percent. Plaintiffs complain that the court erred in looking to five-year survival rates. We agree that although *Ladner* discussed five-year survival rates for cancer,[12] *Ladner* cannot fairly be read to require a greater than 50 percent survival rate for five years. As we understand Mississippi law, there is no five-year element to "substantial improvement." However, the SEER data shows that even the one-year survival rate, the shortest time-period reported, never exceeds 23 percent, even when broken down by reporting year and sex. Defendants also submitted peer-reviewed statistical evidence that even in cases of patients who underwent resection of localized cancers of the pancreas, the median survival was only about 15 months. Given these abysmal statistics, we cannot say that the district court abused its discretion in concluding that the proffered expert opinions on substantial improvement were not sufficiently reliable to warrant admission into evidence.

Plaintiffs argue that the evidence supports a finding that Young was suffering a specific form of cancer of the pancreatic region, namely cancer of the ampulla of Vater, the structure where the common bile duct from the liver and gall bladder and the pancreatic duct meet the duodenum. They point to figure 6-21 from Shackelford's text, indicating that the survival rate for sufferers of cancer of the ampulla undergoing resection exceeds 50 percent during the first two to three years, based on a study of 40 patients. They point to documentation in the record indicating cancer of the ampulla. Sodeman testified that, based on his review of the medical records, the tumor present when Moses operated was in the "ampullary area of the pancreatic duct." Anderson testified that based on his review of the records the malignancy was "in the area of the ampulla and head of the pancreas." After a careful review of the evidence, we conclude that a rational jury could not find that Young suffered cancer limited to the ampulla, as opposed to cancer of the pancreas itself. The original "atypical ductal cells" extracted by Dr. Moses during surgery in March of 1993, which plaintiffs contend indicated the presence of cancer, were indisputably extracted from a mass found on the pancreas itself. The only other surgeon who opened the patient and observed the pancreas,

---

[12] 515 So.2d at 885.

6

Dr. Stolier, found carcinoma of the head of the pancreas in September of 1993. Plaintiffs' own expert, Dr. Anderson, stated in his affidavit that Dr. Moses found "a cystic mass in the pancreas," and that the malignancy diagnosed in August 1993 existed in March 1993. In his deposition he agreed that the cancer started "[w]ithin the pancreatic pseudocyst." Defendants' experts all attested that Young suffered from cancer of the pancreas itself at the time of his March 1993 surgery. Dr Sodeman referenced "the carcinoma of the ampulla of vater," in his affidavit, and noted records of Young's treatment finding cancer of the ampulla in August 1993. There are records indicating cancer of the ampulla, generated in August of 1993 when Young sought treatment at the Digestive Health Center. The records indicate that an esophagogastroduodenoscopy was performed, followed immediately by an endoscopic retrograde cholangiopancreatography (ERCP). While the records are technical, they clearly indicate that a scope was inserted into the duodenum and that a "large friable mass" was observed at the ampulla of Vater. The ampulla, unlike the pancreas, was visible because the ampulla is a tubular structure that connects the bile and pancreatic ducts to the duodenum. A syringe biopsy of the ampulla was also performed and the pathology report found poorly differentiated adenocarcinoma, a form of cancer. These records demonstrate, at most, that Young suffered from cancer of the ampulla in August of 1993. They do not show that Young did not suffer from cancer of the pancreas as well, and the hospital discharge summary describing the August procedure states that as to the cancer found, "[i]t was suspected that this was pancreatic in origin but could [not be] told if it was from the ampulla or from the pancreas."

Plaintiffs argue that the unusual circumstances of this case should have compelled the district court to look beyond the published statistical evidence. They note that the mass located on the pancreas in March 1993 was noticed by happenstance, since Dr. Moses was performing surgery to remove Young's gallbladder. Plaintiff's expert Anderson reasoned that the earlier cancer is detected the better. Plaintiffs argue that the chance for early detection was so unusual in these circumstances that statistical evidence is not available. While finding this reasoning logical

7

and even "compelling," the court nevertheless excluded it, concluding that the evidence was not sufficiently reliable to warrant admission. We cannot say that the district court abused its discretion in so holding, in light of the district court's own reasoning and the uniquely rapid and deadly progression of pancreatic cancer. We note that Dr. Anderson is by profession a medical examiner, and admitted that he is not a surgeon, has never performed an ERCP, has never "performed any type of an operation on a live patient such as removing a gall bladder or aspirating a pancreatic cyst or pseudocyst," and has never performed a tissue biopsy on a live patient.

Plaintiffs finally argue that they offered evidence that with proper treatment Young would have suffered less and that the loss of improvement in his quality of life is a recoverable form of damages, even if the length of his life could not have been extended. Dr. Sodeman testified that Young would have experienced "less pain" if the alleged tumor had been resected, but also conceded that the "Whipple procedure" for removing cancerous tissue from the pancreatic region would likely have a mortality rate of 15 percent. He also conceded that the procedure would result in "the acute problem of recovery from the surgery," that the surgery could result in "pancreatic insufficiency," including diabetes, due to the removal of a large portion on the pancreas, and that normal digestion would be affected because the procedure also involves removal of portions of the stomach and duodenum. Dr. Anderson attested that with correct diagnosis "the quality of life would have been greatly enhanced." The district court reasoned that Anderson "was not able to offer any testimony which would be admissible in support of this speculation." We see no basis for concluding that plaintiffs' expert testimony regarding quality of life rested on a sounder scientific footing than their testimony regarding quantity of life, and for the reasons discussed above, the district court did not abuse its discretion in excluding the latter.

AFFIRMED.