**United States Court of Appeals**
**Fifth Circuit**
**F I L E D**
**April 29, 2004**
Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 03-30750

_____

CHADWICK E. WELLS,

Plaintiff-Appellant,

versus

CITY OF ALEXANDRIA; JOHN HAMERNICK;
WILLIAM GERARD ALWELL,

Defendants-Appellees.

_____

Appeal from the United States District Court for
the Western District of Louisiana
(USDC No. 01-CV-1686)

_____

Before KING, Chief Judge, REAVLEY and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

The summary judgment in favor of defendant-appellees is affirmed, for the

following reasons:

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should
not be published and is not precedent except under the limited circumstances set forth in
5TH CIR. R. 47.5.4.

1. Insofar as plaintiff-appellant Chadwick Wells' petition can be construed as asserting a disability discrimination claim under federal or state law, the district court rejected these claims for various reasons, and Wells does not challenge these rulings. On appeal Wells maintains that he never asserted a federal claim. If a state disability discrimination claim was ever alleged, it is abandoned on appeal. See Johnson v. Puckett, 176 F.3d 809, 814 (5th Cir. 1999).

2. Wells alleged a retaliation claim for reporting that defendant and plant superintendent Gerard Alwell had taken roofing material for personal use. We agree with the district court that summary judgment on this claim was warranted. Louisiana has a whistleblower statute, La. Rev. Stat. Ann. § 23:967 (West 1998), which allows a private suit for violation of its provisions. The statute provides that "[a]n employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law . . . [d]iscloses or threatens to disclose a workplace act or practice that is a violation of state law." (Emphasis added). This statute by its terms requires the employee to advise the employer of the violation of law before reporting it to outside authorities, and there was no evidence that Wells so advised his employer, defendant City of Alexandria.

3. We also agree with the district court that for the Louisiana whistleblower statute to protect the employee, the employer "must have committed a violation of state law." Puig v. Greater New Orleans Expressway Comm'n, 772 So.2d 842, 845 (La. Ct. App. 2000) (internal quotation marks omitted). While Wells questions the correctness of

2

Puig, we generally defer to the holdings of lesser state courts unless we are convinced that the state supreme court would rule otherwise. See United States v. Johnson, 160 F.3d 1061, 1063-64 (5th Cir. 1998). The district court reasoned that the state police found no violation of state law. The summary judgment record shows that there was no theft because the contractor who supplied the roofing material had told Alwell that the extra roofing material was going to be thrown away and that city employees could have it. Wells does not now argue otherwise.

4. Insofar as Wells contends that a violation of state law nevertheless took place because Alwell accepted a gift of roofing material in violation of state law, La. Rev. Stat. Ann. § 42.1115(B) (West 1990) provides that no public employee may accept "any thing of economic value as a gift or gratuity" from a person "if such public employee knows or reasonably should know that such person. . . [c]onducts operations or activities which are regulated by the public employee's agency" or "[h]as substantial economic interests which may be substantially affected by the performance or nonperformance of the public employee's official duty." Wells does not point to summary judgment proof that the agency employing Alwell—the city electric department—regulates roofing contractors,[1] or that Alwell's official duties could have had a substantial effect on substantial economic

---

[1] Wells states in his appellate brief that "[i]n his deposition, Alwell testified it was part of his job duties as Power Plant Superintendent to monitor the work of the roofing contractor from whom he received the material." The fact that a plant superintendent might monitor a roofing job at one plant does not, in our view, mean that roofing contractors "are regulated by the public employee's agency" under section 1115(B).

interests of the roofing contractor. Wells also failed to offer proof that the roofing material, which the roofing contractor treated as refuse, had economic value. Wells fails to demonstrate that § 42.1115(B) applies.

5. Wells alternatively argues that under La. Rev. Stat. Ann. § 42.1169(B) (West Supp. 2004), "[a]ny public employee who reports to a person or entity of competent authority or jurisdiction information which he reasonably believes is a violation of any law . . . shall be free from discipline or reprisal for reporting said acts of alleged impropriety." This statute only requires a reasonable belief that a violation of law occurred. However, we do not believe that Wells has a private cause of action under state law for violations of section 42.1115(B) or section 42.1169(B). These provisions are part of the Code of Governmental Ethics, which establishes a Board of Ethics and an administrative procedure for hearing ethics complaints. Id. §§ 42.1132, 42.1141 (West Supp. 2004). This Code does not provide a private cause of action for government employees, except that a court may enforce an order or decision of the Board, id. § 1135, and that appeals of these administrative decisions may be made to First Court of Appeal, id. § 1142. See Nolan v. Jefferson Parish Hosp. Serv. Dist. No. 2, 790 So.2d 725, 732 (La. Ct. App. 2001) ("Jurisdiction to enforce the Code of Governmental Ethics lies in the Board of Ethics. We find no provision of any private right of action under the Code of Governmental Ethics; the employee's remedy is to complain to the Board of Ethics, which then investigates and takes action to protect the employee, if appropriate.") (citation and footnotes omitted). We also note that section 1169(C) expressly provides

4

that any public employee who is suspended, demoted, or dismissed in violation of section 1169 "shall report such action to" the Board of Ethics.

6. Wells also asserted a personal injury claim based on injury to his knee. The district court correctly held that workers' compensation is Wells's exclusive remedy against defendants for work-related injuries unless the injuries resulted from an intentional act. See La. Rev. Stat. Ann. § 23:1032 (West 1998). The employer acts intentionally if he "1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or 2) knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result." Reeves v. Structural Preservation Sys., 731 So.2d 208, 211 (La. 1999) (internal quotation marks omitted). Summary judgment was warranted on the personal injury claim. There is no direct evidence that the city, through its supervisors, consciously desired that Wells re-injure his knee or knew this result was substantially certain to follow. There was evidence that Wells was assigned unpleasant cleaning and maintenance assignments and that his efforts to leave for physical therapy were restricted on one or perhaps two occasions, but this evidence is insufficient for a reasonable trier to fact to find that the defendants were trying to re-injure Wells' knee, or knew that an injury was substantially certain to follow from their conduct. Defendants offered summary judgment evidence that the job duties of Wells's operator position included cleaning the plant. We further note that the three specific cleaning and maintenance assignments about which Wells complains occurred during periods where his doctor's

5

treatment/restriction reports state that his activities were unrestricted.[2] Evidence that defendants Alwell and Hamernick were angry at Wells or were motivated by a general desire to retaliate against him is not proof of a desire to physically injure Wells. If the record as a whole could not lead a rational jury to find for the nonmoving party, there is no genuine issue for trial and summary judgment is warranted. Capital Concepts Props. 85-1 v. Mutual First, Inc., 35 F.3d 170, 174 (5th Cir. 1994). There is no evidence that defendants understood the exertion required to cause Wells to re-injure his knee. Wells did not specifically tell defendants that the assignments would cause him to re-injure the knee.[3] Alwell testified in deposition that he thought Wells was physically capable of doing the cleaning. Hamernick testified that he thought Wells could perform the assignments because Wells had told him he could do the work and he had seen Wells jump from the back of boats and run up stairs. The evidence that defendants intended to cause a physical injury to Wells can at best be described as colorable. Under modern summary judgment practice, "there is no issue for trial unless there is sufficient evidence

---

[2] Wells complains about cleaning and maintenance assignments he performed on August 11, 2000, February 3, 2001, and February 12, 2001. A February 28, 2000 doctor report limits his activities to "Light duty at 90%," but states that this restriction is only in effect until March 15, 2000. An August 16, 2000 report states that he should avoid "consistent maintenance, prolonged standing & janitorial duties," but a September 6, 2000 report states that these restrictions are only in effect until October 18, 2000.

[3] Wells did testify that with respect to one of the cleaning assignments, he had told Sonny Craig, the City Director of Utilities, that "it was against my doctor's excuse," and that Hamernick then called Wells and told him "to do it or go home." Hamernick, however, testified that Wells "told me he could do the task and he went to it."

favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted).

8. Wells also argues that he raised a fact issue on whether he was constructively discharged. Under federal law, the constructive discharge doctrine is an alternative way of proving an adverse employment action in Title VII and other cases, but constructive discharge is not itself a cause of action. It is a means of proving the element of an adverse employment action where the employee quits instead of being fired. Wells does not persuade us that Louisiana law is different from federal law in this regard. If there is no cause of action for the reasons discussed above, proving a constructive discharge alone does not entitle Wells to relief. Similarly, although the petition alleges a "hostile work environment," Wells does not persuade us that Louisiana law recognizes a separate tort for hostile work environment, independent of the disability discrimination, whistleblower, and intentional personal injury claims which fail for the various reasons discussed above.

AFFIRMED.