STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-04-163

KATAHDIN PAPER LLC,

Plaintiff

v.

ORDER

INEXCON MAINE, INC.

Defendant,

STATE OF MAINE
Cumberland, ss, Clerk's Office
SUPERIOR COURT

JUL 2 6 2004

RECEIVED

DONALD L. [illegible]
LAW LIBRARY

AUG 20 2004

v.

BRASCAN CORPORATION,

and

BRASCAN FINANCIAL CORPORATION,

Third Party Defendants.

Before the court is the Defendant Inexcon Maine, Inc.'s (Inexcon), motion to amend its counter-claim and third party complaint.

In addition, Plaintiff Katahdin Paper LLC (Katahdin) and Third Party Defendants Bascan Financial and Brascan Financial (US) Corporation (collectively Brascan) move for judgment on the pleadings against Counts Two through Five of Inexcon's counter-claim and third party complaint.

## FACTS

In this case, Inexcon is the sole shareholder of Great Northern Paper (GNP). After a series of complicated financial transactions, Inexcon sold GNP's assets to Brascan. Inexcon claims that critical to this deal was the sale of real estate to GNP. A

three-cornered transaction was developed by which Brascan would pay Inexcon $300,000 on a note for the property, and the property would be conveyed to GNP.

In the instant action, Katahdin brought suit to collect on an alleged $4,000,000 worth of receivables. Katahdin alleges that through a series of transactions, a sum of $4,000,000 was owed to a subsidiary of GNP. Katahdin then purchased that subsidiary and now the $4,000,000 is allegedly owed to Katahdin.

Inexcon counter-claimed for declaratory judgment, fraudulent misrepresentation, negligent misrepresentation, and uniform commercial code violation.

## DISCUSSION

### Motion to Amend

A motion to amend a pleading may be done "only by leave of court or by written consent of the adverse party . . . and leave shall be freely given when justice so requires." M.R. Civ. P. 15(a). Whether to allow amendment is within the sound discretion of the trial court. In re Sen, 1999 ME 83, ¶10, 730 A.2d 680, 683.

In this case, none of the parties will be prejudiced by allowing Inexcon to amend its pleadings. Inexcon's original answer was filed March 26, 2004, and the motion to amend the complaint was filed May 5, 2004, a little over a month later. The discovery process has just begun and will last until December 2, 2004. The motion to amend the answer, counter-claim, and third party complaint will be granted.

### Motion for Judgment on the Pleadings

A "motion for judgment on the pleadings is nothing more than a motion under M.R. Civ. P. 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief can be granted." Cunningham v. Haza, 538 A.2d 265, 266 (Me. 1988). In this case,

the motion under Rule 12(c) tests the sufficiency of the counter-claim and third party complaint.  See id.

Katahdin and Brascan argue that Inexcon's counter-claims fail because Brascan's claim for setoff is not a denial of liability under the $300,000 note.  Citing correctly to 20 Am. Jur. 2d, Counterclaim, Recoupment, and Setoff § 6, Katahdin and Brascan argue that "setoff does not operate as a denial of the [counter-claim] plaintiff's claim. . . ."  This American Jurisprudence section goes on to state that "[t]he right to setoff is an exercisable right, not a fixed or natural right conclusively established by the mere fact that each of the parties has a claim against the other" and "[s]etoff is an incident of judicial proceedings in which both parties become actors and is accomplished only by judicial action."  Id.; see also Capital Concepts Props. 85-1 v. Mut. First, Inc., 35 F.3d 170, 175 (5th Cir. 1994) (stating that setoff is a form of equitable relief); Lines v. Bank of Am. Nat'l Trust & Sav. Assoc., 743 F. Supp. 176, 182-83 (S.D. N.Y. 1990) (same).[1]

Although Katahdin and Brascan argue that this right to setoff nullifies the defendant's counter-claims and third party complaint, this is far from clear.  In this case, the defendant's counter-claim alleges that Brascan committed fraud against Inexcon by promising to pay on the $300,000 note and then turning around and claiming setoff, knowing all the time that it never intended to pay on the note.[2]  Inexcon also claims that Brascan and Katahdin made negligent and fraudulent misrepresentations against Inexcon with regard to the note, and that Brascan and Katahdin are equitably estopped from making the claims in the present case.  It is clear that Brascan owes on the note, but Brascan must prove the $4,000,000 claim in the complaint.  Therefore, the motion to

---

[1] Setoff was at one time a statutory right in Maine.  Ingraham v. Berliawsky, 128 Me. 307 (1929).  That statute has since been repealed.  See P.L. c. 317 sec. 180.

[2] Although the parties in this case are sophisticated businesses, for the purposes of Rule 12(c), the allegations in the complaint are assumed to be true.

dismiss must be denied. The issues relevant in this case, however, may be narrowed on a motion for summary judgment. But that is not before the court at this time.

The entry is:

Defendant Inexcon Maine, Inc.'s, motion to amend is GRANTED.

Plaintiff Katahdin Paper LLC, Brascan Corporation, and Brascan Financial Corporation's motion to dismiss is DENIED.

Dated:July 26, 2004

Roland A. Cole
Justice, Superior Court

4

F COURTS
nd County
ox 287
ne 04112-0287

NICHOLAS WALSH ESQ
111 COMMERCIAL STREET
PORTLAND ME 04101

F COURTS
nd County
ox 287
e 04112-0287

JARED DES ROSIERS ESQ
ONE MONUMENT SQUARE
PORTLAND ME 04101

STATE OF MAINE

CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-04-163
RAC - CUM- 12/16/2004

Katahdin Paper, LLC,

Plaintiff

v.

Inexcon Maine, Inc.,

Defendant

STATE OF MAINE
Cumberland, ss Clerk's Office
SUPERIOR COURT

DEC 16 2004

RECEIVED


ORDER

DEC 27 2004

v.

Brascan Financial Corporation and Brascan Corporation,

Third Party Defendants

This case comes before the court on Defendant Inexcon Maine, Inc.'s Motion for Partial Summary Judgment.

## FACTS

Katahdin Paper, LLC (Katahdin) acquired the assets of Great Northern Paper after Great Northern Paper (Great Northern) filed for Chapter 11 bankruptcy in January 2003. Among those assets is a $4,000,000 "receivable" allegedly owed by Inexcon Maine, Inc. (Inexcon) to a wholly owned subsidiary of Great Northern Paper, Maine Timberlands Company (MTC). The sale of Great Northern's assets included the transfer of MTC's assets and liabilities as well, and Katahdin is now seeking to collect this "receivable" asset from Inexcon.

Katahdin holds Great Northern's (and MTC's) assets as a designee of Brascan Corporation, who was able to purchase those assets only after protracted negotiations with both Inexcon[1] and Great Northern's bankruptcy estate. Inexcon held title to some real estate that was critical to the continuing operation of Great Northern's business, and Brascan did not want to own the business without owning that real estate. Inexcon agreed to exchange title to the real estate for a $300,000 note that Brascan would pay to the bankruptcy estate and the trustee would assign to Inexcon. At the last minute, Brascan offered to give Inexcon a $300,000 note directly. Inexcon agreed. The note was passed, the real estate was transferred to Great Northern, and the bankruptcy estate then sold Great Northern's assets to Brascan. The asset sale was memorialized in a detailed Asset Purchase Agreement signed by Great Northern and Brascan.

However, Brascan, and its designee Katahdin, did not honor the $300,000 note to Inexcon. Instead, Katahdin asserted it would offset the $300,000 amount owed to Inexcon from the $4,000,000 "receivable" Inexcon allegedly owed MTC and now owed Katahdin.

On March 10, 2004, Katahdin brought suit alleging a breach of Inexcon's obligation to pay the $4,000,000 receivable claim, and seeking a declaratory judgment addressing Katahdin's right to offset its $300,000 obligation to Inexcon from that $4,000,000 claim.

Inexcon counterclaimed, seeking a declaratory judgment that Inexcon did not owe Katahdin paper $4,000,000, because Inexcon had passed the benefit of the $4,000,000 to Great Northern and MTC before the Great Northern bankruptcy

---

[1] Inexcon was the sole holder of 100% of Great Northern's stock, but Inexcon did not enter bankruptcy itself.

and asset sale. Those benefits then passed to Brascan when Brascan bought Great Northern's (and MTC's) assets. Inexcon's complaint included three claims against third-party, Brascan Corporation. Counts I and II alleged fraud and negligent misrepresentation in the exchange of the real estate for the $300,000 note. Count III asked the court to pierce the corporate veil of Brascan Corporation to reach the actions of Katahdin and Brascan Financial. Counts IV and V alleged equitable and promissory estoppel against Katahdin, Brascan Corporation and Brascan Financial.

In May 2004, Plaintiff Katahdin moved for a judgment on the pleadings in Counts II through V of Inexcon's counterclaim and third party complaint, on the theory that any liability to Inexcon was offset by Inexcon's $4,000,000 liability to Katahdin. This motion was denied. In July 2004, Inexcon moved for partial summary judgment on both counts of Katahdin's complaint.

## DISCUSSION

"We review the grant of a motion for summary judgment by viewing the evidence in the light most favorable to the party against whom judgment has been granted, to decide whether the parties' statements of material facts and the referenced record material reveal a genuine issue of material fact." *Rogers v. Jackson*, 2002 ME 140, P5, 804 A.2d 379, 380 (citations omitted). We give the party opposing a summary judgment the benefit of any inferences that might reasonably be drawn from the facts presented. *Curtis v. Porter*, 2001 ME 158, P9, 784 A.2d 18, 22. When the moving party is the defendant, the burden rests on the defendant to show that the evidence fails to establish a prima facie case for each element of the cause of action. *Stewart ex rel. Stewart v. Aldrich*, 2002 ME 16, P8, 788 A.2d 603, 606.

The dispute here centers upon Great Northern and Brascan's Asset Purchase Agreement. Specifically, the parties dispute whether the $4,000,000 receivable asset of MTC passed to Brascan, (and then to Katahdin) under the express terms of the Asset Purchase Agreement or whether it was excluded by those terms. The dispute turns on whether a portion of the agreement that excluded from the sale any claims held by Great Northern against Inexcon also excludes the receivable claim Inexcon allegedly owed to MTC.

The parties do not dispute that the following provisions were included in the Asset Sale Agreement:

1.2 "Seller[2] shall sell and deliver to Purchaser, and Purchaser shall purchase from Seller, the Assets, free and clear of any and all liens, Claims and encumbrances or interests except as specifically permitted herein; including, without limitation the MTC Item."

1.1(b) defines "Assets" as "all of Seller's right, title and interest in the properties, assets and rights of any kind whether tangible or intangible, real or personal, owned, licensed, leased by Seller . . . including without limitation . . . the MTC Item . . . but excluding the Excluded Assets as defined in Section 1.3 hereof."

1.3 "Excluded Assets. The Assets shall not include any of the following . . . (c) . . . all claims and causes of action (if any) against the officers, directors, the shareholder and certain affiliates of Seller (other than Maine Timberlands Company), and all third parties (except purchaser and its affiliates and Cianbro Corporation ("Cianbro")), all insurance claims and proceeds relating thereto, and all insurance policies of Seller;

---

[2] "Seller" here is the Bankruptcy Estate, acting for Great Northern. Inexcon maintains the Estate remains the only party who can properly sue on the alleged $4,000,000 debt, if it exists, because that debt is excluded from the asset sale to Katahdin and remains, if it exists, the property of Great Northern.

The "shareholder" of the Seller, in this case, is Inexcon, who owns 100% of Great Northern shares.

Finally, a separate paragraph addresses the sale of MTC assets, allegedly including the $4,000,000 receivable asset.

1.10 <u>MTC Transfer.</u> At Purchaser's option, Seller shall transfer, or caused to be transferred, to Purchaser at Closing, for no additional consideration, either (i) the assets of Maine Timberlands Company, and Purchaser will assume the liabilities reflected on the balance sheet as of February 28, 2003 and attached hereto as <u>Exhibit A</u> (the "<u>MTC Balance Sheet</u>"), and normal, ordinary course operating liabilities arising in connection with such assets since February 28, 2003, or (ii) all of the capital stock of Maine Timberlands Company, which will be conveyed subject to the liens of BEMI and Carrier (either of such assets or stock, the "<u>MTC Item</u>").

The <u>MTC Balance Sheet</u> referred to above plainly lists as an asset, a $4,000,000 receivable due from Inexcon.

Neither party disputes that the transfer of Great Northern and Maine Timberland Company generated separate bills of sale, each incorporating the Asset Purchase Agreement by reference.

The parties vigorously dispute how the above terms operate with regard to the alleged $4,000,000 asset held by MTC. Inexcon argues that the $4,000,000 receivable falls under 1.1(b)'s clear definition of an "asset" held by Seller Great Northern as owner of MTC, and is clearly excluded in 1.3 of the Asset Purchase Agreement as a "claim" against "shareholder" Inexcon. Katahdin argues that 1.1(b)'s definition of assets includes only the assets of Great Northern, and that MTC's assets are dealt with separately under 1.10 MTC Transfer. Therefore, only Great Northern's assets can be excluded under 1.3. Both parties argue their interpretation reflects the intentions of Brascan and Great Northern's bankruptcy estate, the signers of the Asset Purchase Agreement.

A "threshold question in contract interpretation is whether the contract is ambiguous in any material respect. If the contract is not ambiguous, the construction of the contract is a question of law to be resolved by considering the writing as a whole and giving the language its plain meaning." *Estate of Plummer*, 666 A.2d 116, 119 n.1 (Me. 1995). "Contract language is ambiguous when it is reasonably susceptible to different interpretations." *Pine Ridge Realty v. Mass. Bay Ins. Co.*, 2000 ME 100, ¶ 14, 752 A.2D 595, 599 (citations omitted). In the face of ambiguity, "the touchstone of contract interpretation is the intent of the parties." *Pine Ridge Realty*, 2000 ME 100, ¶ 21, 752 A.2d at 601.

Here, a search for ambiguity in the terms of the Asset Purchase Agreement appears to be fruitless. The assets of Great Northern are expressly defined in 1.1(b) of the Asset Purchase Agreement as including without limitation the "MTC Item." The "MTC Item" is defined in 1.10 as the assets of MTC and the stock of MTC, either of which may be transferred to Purchaser at Purchaser's option. Thus MTC's assets, including the $4,000,000 receivable from Inexcon, are expressly defined to be part of the assets of Great Northern, and subject to the terms of 1.3, governing exclusions. As a "claim" against Great Northern's "shareholder" Inexcon, the alleged $4,000,000 receivable is expressly excluded by the terms of the Asset Purchase Agreements at 1.3. Although MTC's and Great Northern's assets were transferred by separate bills of sale, those bills of sale expressly incorporate the provisions of the Asset Purchase Agreement by reference. Plaintiff's argument that the language of the Asset Purchase Agreement does not reflect the intent of the parties is not material in the face of an unambiguous agreement, entered after protracted negotiations by sophisticated business entities. Because the undisputed facts show Katahdin has

failed to establish a prima facie case for its claims against Inexcon, Inexcon is entitled to judgment as matter of law on those claims.

WHEREFORE this Court **GRANTS** Defendant Inexcon Maine, Inc.'s Partial Motion for Summary Judgment on Counts I and II of Plaintiff Katahdin Paper, LLC's Complaint.

Dated _____December 16, 2004

Roland A. Cole
Justice, Superior Court

IF COURTS
and County
Box 287
ine 04112-0287

CLIFFORD RUPRECHT ESQ
ONE MONUMENT SQUARE
PORTLAND ME 04101

_pL

F COURTS
nd County
ox 287
e 04112-0287

NICHOLAS WALSH ESQ
111 COMMERCIAL STREET
PORTLAND ME 04101-4719